H. S. FRENCH *v.* D. D. DICKEY and others.

October Term, 1876.

DEMURRER — PRESUMPTION, WHEN AGAINST THE PLEADER. — Although in
this state the rule upon a demurrer is, contrary to the English rule, that
every reasonable presumption is to be made in favor of the bill, yet it will
be otherwise in the case of an obviously stale demand, barred both by the
statute of limitations and lapse of time.

VENDOR'S LIEN — INDEPENDENT NOTE. — Although the lien reserved by a
vendor on the face of his deed for unpaid purchase-money, or notes given
therefor, will continue, even if there be a change in the form of these
notes, yet it will not attach to a note forming no part of the original con-
sideration, nor given in novation or renewal of the original security.

*Shackleford*, for complainant.
*M. B. Howell*, for defendants.

THE CHANCELLOR : — On demurrer.   The facts disclosed
by the bill seem to be these :  On September 1, 1856, com-
plainant sold to defendant Dickey a lot in Nashville for
$10,000, " taking his several notes for $1,666.66," and exe-
cuted to him a deed retaining on its face a lien for the pay-
ment of the purchase-money.   It does not appear when
these notes fell due, nor, except by inference, how many they
were.   Dickey went into possession of the property.   After-
wards he and complainant had transactions amounting to
thousands of dollars, and Dickey paid off all of said notes
except the last.   On June 1, 1868, complainant and Dickey
had a settlement.   At that time complainant held a note of
Dickey's, dated November 15, 1856, for $500, and had
against him an open account.   " Upon examination of the
notes and papers," complainant found that his son and
book-keeper had given Dickey a credit of $514 on the $500
note, and a credit for the same amount on the books.   Dickey
admitted he was entitled to only one credit ; said he would
take up the old note with the credit on it, and give a new
note of the same date ; and this was done by tearing the note
from a protest for non-payment, to which it was attached,

and substituting the new note in its place on the protest. He executed to the complainant at the same time, for a bal-ance of account, another note for $469.24. Complainant then remarked that the matters between them ought to be definitely settled and closed up, and told Dickey to write a receipt, stating that "when the note of $500, with the interest, and the note of $469.24 were paid, that would discharge the note of $1,666.66, which was a lien upon the prop-erty, and he would deliver the same up to him." Dickey returned in a few hours with a written receipt, which he said he had written in accordance with the request, and com-plainant signed it without examination, and never saw it for years afterwards. He then found that it recited that when a note of Dickey to complainant, due seven months after date, for $542 was paid, then the note of $1,666.66 and the note of $500, with a credit of $514 on it, should be given up. On February 23, 1872, complainant having had some-other transactions with Dickey, sent his clerk to settle with, him ; and upon a settlement it was found that complainant was indebted to Dickey an amount sufficient to pay off the note of $469.24 with interest, and $42 over, which was, at Dickey's request, placed as a credit on the note of $500 above-described. " This $500 note was held by complainant as representing the amount the said Dickey owed on the pur-chase aforesaid, for which the $1,666.66 note was given by Dickey and held by complainant." Dickey did not pretend at that time that he had paid the $500 note, or any part of it, but promised from time to time to pay it. Complainant. knew nothing about the receipt held by Dickey as aforesaid, until Dickey left the state, and until after the property was sold by him. When the property was offered for sale, and purchased by the party now holding it, complainant forbade the sale, stating that he had a lien on the property. After-wards complainant heard that Dickey had the receipt as. above. Complainant did not intend to give such a receipt, and insists that a fraud was practised upon him by Dickey

in taking it.   Complainant never held such a note for $542 as is described in the receipt.   Complainant insists that there is a balance due him on the note for $1,666.66, which, when paid, will be in discharge of the note for $500 and interest, and the lien retained by the deed.   Dickey promised from time to time to pay this, before he left the state, and never pretended that he had paid the debt until after the property had been sold.   The bill seeks to subject the land to the satisfaction of this balance of purchase-money.

The bill is defective, perhaps intentionally so, in giving dates.   It does not show when Dickey sold the land or left the state.   It specifies no time when any promise to pay was made by Dickey.   It fails to state when complainant examined the receipt signed by him.   According to the English rule, the presumption, upon demurrer, is always against the pleader, because he is presumed to state his case in the most favorable way for himself, and, therefore, if he has left any thing material to his case in doubt, it is assumed to be in favor of the other party.   Per Lord Cottenham, in Columbine v. Chichester, 2 Phill. 28.   See also Attorney-General v. Mayor of Norwich, 2 Myl. & Cr. 423 ; Foss v. Harbottle, 2 Hare, 502 ; Padwick v. Stanley, 9 Hare, 628. Our Supreme Court seem to have arrived at the opposite conclusion, — that, upon a demurrer, every reasonable presumption is to be made in favor of, rather than against, the bill.   Per McKinney, J., in Lincoln v. Purcell, 2 Head, 154.   And see, to same effect, Gray v. Hays, 7 Humph. 590.   Even in this view, the rule can hardly hold good in the case of an obviously stale demand, long since barred by the statute of limitations and lapse of time.   Dunlap v. Gibbs, 4 Yerg. 94 ; McClung v. Sneed, 3 Head, 218.   In such a case, it is for the party seeking to take his case out of the bar to show special promises and fixed dates. General and vague allegations, and a total absence of dates, will not suffice.   Badger v. Badger, 2 Wall. 87.

The object of the bill is to enforce the vendor's lien for

unpaid purchase-money on a sale and conveyance made on September 1, 1856, exactly twenty years before the filing of the bill,— a lapse of time sufficient to raise the presumption of payment even in the case of a mortgage or trust. This presumption, it is true, may be rebutted by facts, but the facts ought to be clearly stated, and leave no doubt on the mind. There is nothing in the bill to show that the notes given were not payable at once, and it is conceded that all of them were paid except one. Now, it is distinctly stated in the bill that at the settlement on June 1, 1868, the complainant admitted to Dickey, and requested him to write a receipt to that effect, that when the two notes then given, one for $469.24 and the other for $500, were paid, the note for the purchase-money would be discharged also. The bill shows that the note for $469.24 was then given for the balance of account due, having nothing to do with the consideration for the land, and was afterwards paid. That leaves only the $500 note. But the statement of the bill about that note is, that it was given in lieu of another note for the same amount, dated November 15, 1856, and protested for non-payment. No connection between this note and the purchase-money for the land is shown. It is dated only two months and a half after the sale, and, in the absence of any averment to the contrary, cannot be presumed to have any connection with the land trade.

In this view, the bill is filed claiming a vendor's lien on land under a sale made twenty years previously. The lien being claimed, not for any one of the notes given for the purchase-money of the land, nor any part of such a note, but for a note not shown to have any connection in fact with the original trade, either by novation or otherwise. No doubt, the lien reserved by a vendor on the face of his deed, for the purchase-money or for notes given for the purchase-money, will continue although there may be a change in the form of these notes, provided it appears that the new note was executed with an express stipulation that the lien should

continue as before. *Cleveland* v. *Martin*, 2 Head, 128. It, may be that the lien would continue, even if there was no express stipulation on the subject, where the facts demon-strated only a change of form. *Mulherrin* v. *Hill*, 5 Heisk. 58. But, clearly, the vendor's lien will not attach to a note forming no part of the original consideration, nor given in novation or renewal of an original security. The bill does not pretend that the $500 note of November 15, 1856, was given for any part of either of the notes for $1,666.66, and, of course, the note of same date executed on June 1, 1868, in lieu thereof, and, so far as appears, for precisely the same consideration, cannot stand in any better position. Upon the facts disclosed by the bill (and it is upon facts, not surmises, that a complainant's equity must rest), even if this note be still justly due from Dickey to the complainant, it is no lien upon the land. And, as this note is all that the complainant claims any right of action upon, the bill, so far as it seeks to enforce the vendor's lien, necessarily fails. It fails also as a suit to recover upon the note, for there is nothing to give the court jurisdiction except the supposed lien, and the note itself is barred by the statute of limi-tations.

The bill does state that Dickey paid off all of the pur-chase-notes except the last, and that complainant agreed, on June 1, 1868, to execute a receipt to the effect that when the $500 note and the note for $469.24, with interest, were paid off, the unpaid purchase-note would be discharged, and would be delivered up. It is obvious, however, that, as the notes for $500 and $469.24 were not connected with the sale, the purchase-notes were in fact paid off, but by some agreement or understanding between the parties the lien was to be kept alive for these debts. That there was any such agreement is not positively averred; nor, of course, that the agreement was in writing, much less that it was registered. But if, in fact, the original purchase-money was paid in full, no agreement to transfer the lien for the

security of another debt would be of any validity unless in writing, even between the parties, and would be a nullity as to third persons, purchasers of the property, as Dickey's co-defendants are shown to be, unless in writing and registered.

I am of opinion, therefore, that there is no equity on the face of this bill as to any of the defendants; that the second, seventh, and ninth assignments of demurrer are well taken; and that the bill must be dismissed, with costs.