# Richmond.

## RIELY AND ALS. V. KINZEL AND ALS.

### November 15th, 1888.

1. CHANCERY PRACTICE—*Decree—Revival—Laches.*—Twenty-eight years after final decree, confirming sale of land for payment of claims, and after nearly all the parties and witnesses are dead, the record lost, and the property passed through many hands on faith of the title acquired under the decree, a clause in said decree, which provides that "any of the parties to this suit have leave to ask any such further order as may be necessary to enforce the same";

HELD:

    Insufficient to authorize the revival of the suit.

2. IDEM—*Petition to revive—Demurrer.*—A demurrer will lie to a petition to revive such decree if it fail to make all the parties to the original suit parties to the petition, and if it make parties of persons whose only connection with the transaction is that they are the last in the list of purchasers of the land sold under the decree.

3. IDEM—*Interest of parties.*—Heirs named in a decree as being entitled to any balance of the price of lands sold to pay debts, after paying the costs and debts, without proof that said price sufficed to pay the costs and debts and leave a balance;

HELD:

    Not to have such an interest in such decree as entitled them to revive the suit.

Argued at Staunton, decided at Richmond. Appeal from two decrees of circuit court of Frederick county, rendered June 12th, 1886, in the chancery cause of Barbara Kern's administrators against James Riely's heirs. The petition of William Riely, J. B. Riely and Ann R. Burwell against Henry Kinzel, Emma V. Baker, Wm. H. Baker and James R. Richards to revive the said suit which had been dismissed, the petitioners obtained an appeal and *supersedeas.* Opinion states the case.

*A. R. Pendleton,* and *C. S. W. Barnes,* for the appellants.

*Holmes Conrad,* and *Barton & Boyd,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The original bill was filed in 1832 in the old chancery court holden at Winchester, and one of its objects was to enforce the payment of a legacy of seventy pounds, Virginia money, bequeathed by a will which took effect over a century ago. To the original bill an amended bill was filed; then the case went to the court of appeals in 1835, and the decision of the lower court was affirmed in 1845. A final decree was entered in 1854; a bill of review was filed shortly afterwards, and thereupon another final decree was entered June, 1855, ending the cause and retiring it from the docket; and it remained, for more than twenty-eight years, among the *"causes ended"* of the circuit court.

The said decree of 29th of June, 1855, provides that "any of the parties to this suit have leave reserved to them at the foot of this decree to ask any such further order as may be necessary to enforce the same." By a decree of February 3d, 1835, James Riely, administrator *c. t. a.* of George Michael Lawburger, deceased, was ordered to pay to the administrator of Barbara Kern, deceased, seventy pounds, with interest from October 3d, 1782, which, on March 18th, 1854, amounted to $2,480.31; and if not paid, James R. Richards, special commissioner, was directed to sell certain real estate, including the property involved in this controversy. The decree was not enforced by a sale until 1854. The said special commissioner returned his report of sales to the June term of that year, and it was confirmed. The said report is not in the record, and, with other papers of the cause, it was, doubtless, lost during the war, as the town of Winchester, the county-seat of Frederick county, was for four years the gateway through which the invading armies surged,

and which alternated in the possession of the Northern and Southern troops for over eighty times during that period.

The decree does not name the purchasers, nor does it state the amount for which the property was sold. The deeds, however, which were executed by the special commissioner and the heirs of James Riely, deceased, to the purchasers, show that John H. Crum purchased the northern half of the lot on Loudoun or Main street, Winchester, and William R. Denny the southern half. Both Crum and Denny executed deeds of trust to James P. Riely, trustee, on the portions purchased by them, respectively, to secure debts to James R. Richards, special commissioner, and to C. J. Faulkner. As so many of the papers of the suit have been lost, it is impossible to know how C. J. Faulkner acquired an interest in the proceeds of sale; but it is supposed that he became the assignee of the claims of those of the heirs whom he represented on the property sold; and therefore the bonds were executed and secured to him. His letter, filed in the record, indicates that he controlled the claims. In 1857 both Crum and Denny sold and conveyed to G. W. Hammond the entire property, and Hammond assumed the payment of the debts secured on the property to Richards, special commissioner, and to Faulkner. On May 10th, 1865, Hammond's heirs conveyed to Henry Kinzel the whole property, and Kinzel subsequently conveyed an undivided half interest to Denny. Kinzel and Denny executed a deed of partition May 24th, 1867, by which Kinzel took the northern half and Denny took the southern half. Denny afterwards conveyed to Burgess, and Burgess conveyed to Mrs. Baker, formerly Ginn. Kinzel's estate still owns his half.

At the November term, 1883, of the circuit court, the appellants, Wm. Riely, J. B. Riely and Ann R. Burwell, filed their petition praying that the chancery cause of Barbara Kern's adm'r against James Riely's heirs, may be reinstated on the docket of the court, from which it had been retired for twenty-eight years, during which time the property had been bought

and sold, as aforesaid, by all these purchasers; and charging that they, as the children and widow of A. B. Riely, deceased, who was one of the four heirs of James Riely, deceased, are the heirs-at-law and distributees of the said A. B. Riely, and entitled to receive payment of certain sums of money and certain estate, the facts and circumstances respecting which appear from the decrees and papers in the chancery cause of Barbara Kern's adm'r against James Riely's heirs, etc.; and certain deeds and deeds of trust are exhibited, dated March 18th, 1856, by which two bonds—one of John H. Crum to James R. Richards, special commissioner, for $442.40, and one of William R. Denny to James R. Richards, special commissioner, for $429.39—are secured.

The petition further charges that the petitioners are entitled to demand these monies, and that they became of age as follows, viz: William Riely on August 21st, 1861; Irvin Riely on October 12th, 1863, and J. B. Riely on 19th of May, 1869; and the petition prays that a trustee be appointed to execute the deeds of trust, and that Henry Kinzel, Emma V. Baker, William H. Baker, and James R. Richards, special commissioner, be summoned to answer the petition, and that general relief may be granted.

On the same day that the petition was filed a decree was entered reinstating the cause on the docket of the court, and bringing the cause on to be heard on the papers formerly read (when, in fact, many of the papers were lost) and upon the petition, making new parties and bringing strangers into the suit by mere summons to answer the petition at the next term of the court. The persons thus summoned appeared and filed their demurrers to the petition, and, subject to the demurrers, filed their answers to the petition, and at the March term, 1884, the cause was submitted on the demurrers. At the November term, 1885, the court deferred any action on the demurrers, and continued the cause, with leave to either party to take such proof as they might desire, in order to a final decree.

At the June term, 1886, the court, without passing upon the

demurrers, dismissed the petition, saying "that the great lapse of time, the death of parties, the loss of papers and other contemporaneous evidence, and the consequent obscurity in which the history of the matters presented in this suit is involved, render it doubtful—if not impossible—to ascertain the actual facts of the transactions referred to, and make it improper for the court to disturb the transactions now," etc.

We are of opinion that the circuit court properly dismissed the petition, both upon the pleadings and upon the merits. The petition is plainly demurrable for want of proper and necessary parties ; and for this defect the court would have been right to sustain the demurrer and dismiss the bill.

Henry Kinzel, who had purchased the Crum portion of the property, and Emma Baker, a married woman, whose guardian had purchased, as an investment for her, the Denny portion of the property, were not parties to the old retired chancery cause of Barbara Kern's adm'r against James Riely, etc., and were in no way connected with the questions or concerns litigated in that suit, which was a "cause ended" twenty-eight years previously. They were simply the latest of a series of purchasers of real estate, which had been sold in 1854 by James R. Richards, special commissioner, under a decree of December 10th, 1832, in that old original ended cause. If it were proper to proceed against them, and to impeach their title to the property, and make them *new* parties to this old suit by petition merely, certainly Denny and Crum, the original purchasers, under whom they derive title with warranty, should have been made parties and given the opportunity to answer and show that they had paid the debts and discharged the deeds of trust given to secure them.

The petition was demurred to on the ground, *inter alia*, that Denny and Crum were not made parties. The record, or fragment of the record, in the old suit showed that numerous other persons were also heirs and distributees of James Riely, deceased, and the distributees could claim nothing without a settlement

of the accounts of his personal representative; and yet none of
these absolutely necessary parties to any decree for distribution
are made parties to this petition.

The decree of June term, 1854, entered in the cause of Barbara
Kern's adm'r against James Riely's heirs, was a final decree
ending the cause, and ordering it to be taken off the docket and
placed among the causes ended; and the leave reserved at the
foot of that decree (which was upon a bill of review brought,
not by the petitioners, but by the purchasers, out of abundant
caution after the sale of the property had been made, to conclude
their possible claim as infant heirs and distributees of A. B.
Riely, deceased, one of James Riely's heirs), that "any of the
parties to this suit have leave reserved to them at the foot of
this decree to ask any such further order as may be necessary to
*enforce the same,*" could hardly give the right, nearly twenty-
nine years after that decree, to parties who had been twenty-two,
twenty, and fourteen years, respectively, *sui juris,* and on the
spot, to exhume from the *debris* of these old suits such papers as
had escaped the ravage of time and the public enemy; and after
the death of all the actors in the transactions, and the loss or
destruction of many valuable and indispensable papers of the
suit, warrant a court of equity to disturb and take away the
property from purchasers (not *pendente lite,* for there was no
cause pending) for value, and after the cause ended for twenty-
eight years. Innocent purchasers who were not original parties,
nor from their representatives, and who have been for all the
while in open, notorious and confident possession of the prop-
erty, without claim or notice counter to their title.

The petitioner, Mrs. Ann R. Burwell, the mother of petitioners
William Riely and J. B. Riely, who was their guardian under
the will of their father, knew that the suit was pending, and
that she and her children, as the widow and heirs of A. B.
Riely, deceased, had an interest therein. She, then a widow,
united in the deeds to Denny and Crum, and received some of
the purchase-money. William Riely resided with his mother

in Winchester seven years before the war; became of age in 1861, and has resided in Winchester all his life, except for eighteen months or two years; and, in the year 1880, he was appointed by the court commissioner to assess real estate in Winchester. J. B. Riely also lived in Winchester for several years after he attained his majority, as he had done before. After all the parties to the suit and all the actors in the transactions were dead, and many of the papers had been lost or destroyed, they come into court, twenty-eight or twenty-nine years after the cause was ended and retired from the docket, and ask that the remnant of the old suit be resurrected, and that property, now in the hands of innocent persons who have acquired a title to the property, for value, from the original purchasers under a decree of the court in 1832 and a sale confirmed in 1854, in a suit to which they were made parties by a bill of review, shall be subjected to the payment of their claim.

In the case of *Perkins* v. *Lane,* 82 Va. (7 Hansbrough), this court, speaking by Lewis, P., said: "Those who invoke the jurisdiction of a court of chancery must do so within a reasonable time, instead of lying by until, by their supineness and negligence, there can no longer be a safe determination of the controversy." See also *Badger* v. *Badger,* 2 Wall. 87; *Marsh* v. *Whitmore,* 21 Wall. 178.

In the lapse of these twenty-eight years the property changed hands, over and over again, to *bona fide* purchasers for value without notice or intimation of any claim by appellants. And Hammond, who bought and resold the property, died before the war; Crum, one of the purchasers under the decree of sale, died before the war; Riely, the trustee in the deeds of trust, which have been released by regular and formal deeds of release duly recorded, reciting that the debts secured thereby had been duly paid, died in 1857; Wolfe and James Marshall, the administrators of James P. Riely, deceased, who executed the deeds of release as statutory trustees, have been long dead; Philip Williams, the eminent and most accurate lawyer, who was well

conversant of all the parties and titles concerned, and who, the respondent, James R. Richards, special commissioner, says in his answer, drew nearly all, if not all, the deeds, died in 1867. All these actors in the transactions concerning the title and transfers of this property, during twenty-eight years, were in their graves when this petition was filed. James R. Richards, the special commissioner, eighty years of age, after demurring to the petition for want of jurisdiction and for want of equity, and pleading the great lapse of time, says in his answer: "It appears from the record of the old case of *Kern's Adm'r* v. *Riely*, that by an order in that court, entered on the 3d February, 1835, he was appointed a commissioner to sell the real estate referred to, and now, after the lapse of *fifty* years, he is cited   *   *   to give an account of his conduct under that order. He (respondent) has but little if any recollection of the details of this matter beyond what is disclosed by the *fragment that remains of the old chancery cause.* What the property sold for, and what the costs and expenses of sale were, and what residue, if any, remained, nowhere appears; and respondent has, now, no means of ascertaining, at this time, the amount or the fact; all those persons who were familiar with the interests of the parties *are dead* save respondent, who was merely an agent of the court. He submits that no decree can now be made in the darkness that envelops the case without great danger of wrong and injustice."

The lapse of time, death of parties and persons who only could, if living, explain the facts, and the loss or destruction of papers concerning this very ancient and ended chancery proceeding, fully justified and even necessitated the circuit court in dismissing the petition. But there is nothing in the record to support the claim of the petitioners that they, as the widow and children of A. B. Riely, deceased, are entitled to the fund represented by the bonds of Denny and Crum to James R Richards, special commissioner, and secured by the deeds of trust which they now ask to have enforced for their benefit, a balance, after paying the judgment of $2,480.31, in favor of Barbara Kern's

administrator, of less than $800.    A. B. Riely was only *one* of
four children of James Riely, deceased.    By the decree of Feb-
ruary 3d, 1835, the special commissioner was ordered to sell the
property, and "out of the cash payment, if it amounts to so
much, pay to the plaintiff the amount hereby decreed to him."
By the decree of June, 1854 (after he had sold and reported the
sale), the special commissioner was ordered "to pay off and dis-
charge the judgment obtained in the suit of *Kerns* v. *Riely* out
of the cash payment, if sufficient, and if said sum is not suffi-
cient, that the said commissioner be directed to *retain* and *collect*
the bonds given for the deferred payments at the sale of the
property under the decree in this cause, and pay over the amount
that may be due upon said property, and the *residue to the heirs
of James Riely, deceased.*"

After the payment of the Barbara Kerns judgment, there was
left of the proceeds of sale less than $800, out of which the
costs of long and expensive litigation, in both the old chancery
court and the court of appeals, had to be paid by the debtor,
James Riely's estate.

The appellants say they have never received anything.    The
bonds were not payable to them or for them, nor do the deeds of
trust have any reference to them or their interest, possible or
remote.    They were payable to the special commissioner, who
was ordered by the court to collect them and apply their pro-
ceeds; and a payment to him was a good payment.    They were
paid, taken up and cancelled, and the deeds of trust have been
released by deeds of release reciting their full payment, executed
and recorded by James Marshall, the statutory trustee, and by
James R. Richards, the special commissioner.

After the court had announced its decision, the appellants
offered another petition proposing to bring in a large number of
new parties who did not appear to have any interest in the suit,
which, we think, the court properly rejected.    There is no error
in the decrees complained of, and they are affirmed.

DECREES AFFIRMED.