## McGEE *v.* WELCH.

### EQUITY; LACHES; FRAUD.

1. The defense of laches will not be sustained upon a demurrer when the bill clearly charges fraud, and it appears that the complainants have instituted their proceeding within a reasonable time after their discovery of the fraud.
2. An amended bill of complaint filed June 23, 1900, to vacate a deed of certain real estate dated July 15, 1843, charged the fraudulent procurement of the deed by the person under whom the defendants claimed, from an imbecile, who was under his control; a fraudulent

12

combination between a niece of such person, one of the defendants, and another person to divide the property of the imbecile, after the latter's death, May 23, 1891, in fraud of her heirs-at-law, the complainants; and fraudulent abstraction and concealment by the defendants of papers from the files of the court in an equity cause involving the same real estate. Complainants stated that they only suspected the fraud within three years of the commencement of their suit, and had no actual proof of it until within one year. *Held,* reversing a decree dismissing the amended bill on demurrer upon the ground of *laches,* that it should not have been disposed of on demurrer, but that leave should be reserved to the defendants to make the defense of *laches* in their answer and at the hearing.

No. 1022.   Submitted February 13, 1901.   Decided May 21, 1901.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia, sustaining a demurrer to and dismissing a bill in equity to vacate a deed of certain real estate, upon the ground of *laches.*

*Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree of the Supreme Court of the District of Columbia, whereby, upon a bill in equity filed to vacate a deed purporting to convey title to certain real estate in the City of Washington and upon a demurrer filed thereto, the court dismissed the bill of complaint on the ground of *laches.*

The facts, as they appear from the bill, which, of course, must for the present at least be assumed to be true, are these. The property in controversy belonged to one Nicholas Whelan, who died about the year 1830. From him it descended to his daughter, Catharine Ann Whelan, who died in Montgomery County, in the State of Maryland, in the year 1891. She was from birth feeble-minded and deficient in normal mental capacity; and she remained through life a simpleton, incapable of executing a valid deed or contract. She finally became notoriously insane, was so adjudged by a jury of inquisition, and in such condition died. She lived and died upon a farm in Montgomery County, Maryland,

which also, like the property here in controversy, she had inherited from her father.

Soon after the death of Nicholas Whelan and several years prior to the year 1840, by some means alleged by the complainants to be unknown to them, one Thomas Connelly, also at the time a resident of the said Montgomery County, took up his residence on the farm of Catharine Ann Whelan, assumed the management and control thereof and of all her affairs, and kept her in confinement in her house until his death, which occurred about August 4, 1862. What his relationship, if any, was to the poor imbecile, or who her next of kin were at the time, we are not informed by the bill of complaint.

On or about July 15, 1843, while Connelly thus had the imbecile within his power and control, he fraudulently procured from her a deed of conveyance of the property in the City of Washington already mentioned, which deed was duly recorded among the land records of the District of Columbia, and he entered into the possession and control of the property. When he died in 1862 the record title and ownership became vested by descent in his niece and sole heir-at-law, the appellee, Mary J. Welch, who yet remains such record owner and possessor, subject only to a deed of trust or mortgage thereon for the payment of the sum of $2,300 and interest, payable three years after date, executed by her and her husband, her co-appellee Edward P. Welch, on or about April 28, 1897, which mortgage debt had not become due when the original bill of complaint in this case was filed on January 9, 1900.

Connelly was unmarried at the time at which he took the possession of Catharine Ann Whelan's property and affairs, and at the time at which he procured from her the deed which has been mentioned. He married in 1845; and his wife, who survived him, continued the same possession, control and dominion after his death, and until the year 1866. In this last mentioned year one Susan A. Beall, of said Montgomery County, now deceased, and others not named in the bill of complaint, whether related to Catharine Ann

Whelan or not does not appear, filed their petition in court
in that county for an inquisition of lunacy in the case of
said Catharine Ann Whelan, whereupon said Catharine Ann
Whelan was adjudged a lunatic and Susan A. Beall was ap-
pointed committee of her person and trustee of her estate.

On November 27, 1867, said Susan A. Beall, as such
trustee, and Benjamin Beall, her husband, now also deceased,
filed their bill in equity in the Supreme Court of this Dis-
trict against Mary J. Welch and Edward P. Welch, already
mentioned, and one Henry Nailor, who held certain mort-
gages on the property in controversy created by Thomas
Connelly, but subsequently, it would seem, satisfied, to va-
cate the deed of July 15, 1843, fraudulently procured by
Thomas Connelly from Catharine Ann Whelan. This suit
lingered in court for upwards of twenty-seven years. Testi-
mony was taken in it. But, with the exception of some few
unimportant papers, both the pleadings and testimony have
disappeared from the files of the court and are not to be
found, and they are charged to be in the possession or under
the control of the said Mary J. Welch and Edward P. Welch,
or at all events to be somewhere within their knowledge.
The cause never reached a final hearing, and it was dismissed
on July 26, 1894, as having been abated by the death of
Catharine Ann Whelan, which had occurred on May 23,
1891.

Soon after the death of Catharine Ann Whelan and be-
fore the dismissal of the suit in equity just mentioned, the
heirs of Thomas Connelly propounded for probate in Mont-
gomery County, Maryland, a paper writing purporting to be
the last will and testament of Catharine Ann Whelan, and
bearing date on September 28, 1844, which was about four-
teen months subsequent to the date of the deed now sought
to be vacated, and about ten months prior to the marriage of
Connelly. By this alleged last will and testament Catharine
Ann Whelan purported to devise and bequeath all her estate,
both real and personal, to Connelly. Susan A. Beall, already
mentioned, falsely representing herself, as the bill of com-
plaint alleges, to be one of the heirs-at-law of Catharine Ann

Whelan, filed a caveat to the probate of the will, naming Mary J. Welch, Edward P. Welch and Sarah A. Connelly, the widow of Thomas Connelly, as caveatees. Issues were framed, which were sent at the instance of the caveatees to the court of Washington County, Maryland, to be tried. After much testimony had been taken, a compromise was reached between the parties on June 20, 1894, in pursuance of which the caveat was withdrawn, the alleged will was admitted to probate on July 3, 1894, and the property claimed under such will was equally divided between Susan A. Beall and Mary J. Welch. In pursuance also of the same agreement Susan A. Beall, in consideration of the sum of $2,500, was to execute to Mary J. Welch a quitclaim deed of the property in controversy in the equity suit which has been mentioned. The complainants allege that they had no knowledge of this compromise at the time at which it was made, or until within a period of three years before the institution of this suit, and that Susan A. Beall was induced to make the compromise in consideration of a large pecuniary benefit to herself, and in fraud of the rights of the complainants, who were ignorant of all her proceedings.

The complainants, twenty-six in number, of whom eighteen reside in the District of Columbia, one in Virginia, one in Illinois, and six in Montgomery County, Maryland, allege themselves to be the next of kin and sole heirs-at-law of Catharine Ann Whelan, but that they had little acquaintance or association with her, supposed that Connelly had been duly appointed her guardian by some court of competent jurisdiction, had no reason to suspect him and had no suspicion of his fraud until within three years before the institution of the suit, and had not in their possession any evidence of the fraud until within twelve months before the suit was commenced.

These are the allegations of an amended bill of complaint which was filed on June 23, 1900, and the prayer of which is for the vacation of the deed of July 15, 1843, and for an account of rents and profits. The original bill had been filed on January 9, 1900; and it differs from the amended bill in

this that it makes no mention of the proceedings in regard
to the probate of the will of Catharine Ann Whelan and the
compromise effected by the parties to those proceedings.

A general demurrer on the ground that there was no equity
in the bill was interposed on behalf of Mary J. Welch and
Edward P. Welch, and the holders of the deed of trust or
mortgage on the property demurred on the ground of *laches.*
The court sustained the demurrer on the ground of *laches* and
dismissed the bill. And from the decree of dismissal the
present appeal has been prosecuted.

*Mr. Frank T. Browning, Mr. Charles A. Keigwin* and
*Mr. Charles Earl* for the appellants.

*Mr. W. D. Davidge, Mr. J. A. Maedel* and *Mr. W. D.
Davidge, jr.* for the appellees:

1. The defense of *laches* may be made by demurrer.
*Quirk* v. *Leibert,* 12 App. D. C. 394; *Lansdale* v. *Smith,* 106
U. S. 391; *Speidel* v. *Henrici,* 120 U. S. 385; *Bank* v. *Car-
penter,* 101 U. S. 567.

2. Appellants admit knowledge for a number of years " in
a general way " as to the insanity, the custody of the lunatic's
person, and the control of her estate. They do not even aver
that they have made diligent efforts to ascertain the state of
facts. A mere allegation of diligence would not be sufficient,
but would be clearly better than nothing. This is merely a
restatement of the complainants' *laches;* it is not an explana-
tion of any delay whatever. They merely say that until
recently they did not know what their rights were; but this
is not sufficient. A general allegation of ignorance at one
time and of knowledge at another is of no effect. If the
plaintiff made any particular discovery, it should be stated
when it was made, what it was, how it was made, and why
it was not made sooner. *Hardt* v. *Heidmeyer,* 152 U. S.
547, 559, citing and approving *Godden* v. *Kimmell,* 99 U. S.
201, 211, and *Wood* v. *Carpenter,* 101 U. S. 135, 140. See
also *Foster* v. *Mansfield, etc., RR. Co.,* 146 U. S. 88. And

especially must there be distinct averments of the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by the exercise of ordinary diligence, the discovery might not have been before made. *Stearns* v. *Page,* 7 How. 819, 829. See also *Badger* v. *Badger,* 2 Wall. 87, 94, 95; *Foster* v. *Mansfield, Coldwater, &c., Railroad,* 146 U. S. 88; *Halstead* v. *Grinnan,* 152 U. S. 412; *Wood* v. *Carpenter,* 101 U. S. 135, 140; *Richards* v. *Mackall,* 124 U. S. 183; *Felix* v. *Patrick,* 145 U. S. 317; *Evers* v. *Watson,* 156 U. S. 534; *Ware* v. *Galveston City Co.,* 146 U. S. 102; *Wollensak* v. *Reiher,* 115 U. S. 96.

3. The rule does not require *actual knowledge* to sustain the defense of *laches. Means of knowledge* is equivalent to actual knowledge. *Teall* v. *Slaven,* 14 Sawyer, 364; *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417; *Johnston* v. *Mining Co.,* 148 U. S. 360; *Percy* v. *Cockrill,* 10 U. S. Ap. 574; *Wood* v. *Carpenter,* 101 U. S. 140; *Wollensak* v. *Reiher,* 115 U. S. 99; *Swift* v. *Smith,* 79 Fed. Rep. 712–714.

4. The complainants' *laches* in the former suit is sufficient *per se* to bar recovery. *Johnston* v. *Standard Mining Co.,* 148 U. S. 360; *Willard* v. *Wood,* 164 U. S. 502.

5. The bill does not allege a cause of action in the complainants. The wrong alleged, if any, was not a wrong done to them, but to Kitty Ann Whelan, whose suit by the committee abated and has not been revived. *Boardman's Case,* 2 Bland, 85, 98; Shelford on Lunacy, 208; *Cain* v. *Warford,* 3 Md. 454, 461; Alexander's Ch. Pr. 238. On abatement it became necessary to revive in behalf of those claiming authority to continue the suit. Rule No. 50, Supreme Court of the District of Columbia. Rule No. 56, Supreme Court of the United States.

Mr. Justice Morris delivered the opinion of the Court:

While it is startling to find a bill in equity filed to procure the annulment of a deed of conveyance now nearly fifty-

eight years old, and the defense of *laches* and long delay is
one that naturally suggests itself to the consideration of
every reasonable person, yet we are of opinion that, in view
of the allegations of this bill of complaint and of the extra-
ordinary circumstances therein stated, this case is not one
to be disposed of on demurrer.

Three serious charges of fraud are made in the bill, two
of them of an exceedingly grave nature. The first is the
procurement of the deed of July 15, 1843, by Thomas Con-
nelly from the imbecile under his control: the second is
the alleged fraudulent combination and compromise effected
between Mary J. Welch and Susan A. Beall after the death
of Catharine Ann Whelan to divide the property of this
latter between themselves in fraud of her next of kin and
heirs-at-law; and the third is that of fraudulent abstraction
and concealment of papers from the files of the court. Now,
while it is true that the defense of *laches* may be availed of
on demurrer, where it is plain on the face of the bill of com-
plaint that there has been undue delay on the part of the
complainants to assert their rights, and no sufficient reason
is set forth to excuse such delay, yet it is well-settled law
that this defense will not be sustained upon a demurrer,
when the bill distinctly charges fraud, and it appears that
the complainants have instituted their proceeding within a
reasonable time after their discovery of the fraud. Story's
Equity Jurisprudence, Sec. 1520; *Michoud* v. *Girod*, 4 How.
503, 560; *Badger* v. *Badger*, 2 Wall. 87; *Baker* v. *Whiting*,
3 Sumner, 475.

The allegation here is that the complainants had no knowl-
edge of the fraud until within three years before the insti-
tution of the suit, and then only a vague suspicion, and that
they had no actual proof of it until within one year before
the suit; and if this be true, there is certainly no unreason-
able delay in the assertion of their rights. Whether they
might not, with the exercise of diligence, have discovered the
fraud at some earlier time may be a matter for consideration
when all the circumstances are developed; but the reasons as-
signed in the bill for their failure to do so are at least plausible,

especially when we consider the situation of the parties and the circumstances of the case. Moreover, if the right of the appellants to institute inquiry and to take action is to be dated from May 23, 1891, when Catharine Ann Whelan died and their title accrued, they would be far within the statutory period within which their title, if a legal one, could be enforced at common law, and within which, therefore, the doctrine of *laches* would enforce no bar in equity.

But we forbear to make any further comments on the law of the case at this time, inasmuch as anything which we might now say would have a tendency to embarrass its consideration, when the case shall have been fully developed by answer and testimony. All that we now decide is that in our opinion the bill of complaint sets forth a case which requires an answer and which should not be disposed of on demurrer. It may well be that the defense of *laches* will ultimately be made to appear to be a proper defense, and that the bill should be dismissed on that ground alone, if on no other. But such conclusion, if reached at all, should be reached only after the full discovery to be made by an answer and after such testimony thereafter as might be required and might be available. And it should be reserved to the defendants in the cause to make the defense of *laches* in their answer and at the hearing.

It is our opinion that the decree of dismissal should be *reversed, with costs, and that the cause should be remanded to the Supreme Court of the District, with directions to vacate such decree, to overrule the demurrers interposed by the defendants, and to require the defendants to answer the bill of complaint, and for such further and other proceedings as may be just and proper and according to law. And it is so ordered.*

An appeal to Supreme Court of the United States was prayed and allowed.