## JOHNSON *v.* ELKINS.

ALIENS, FORFEITURE OF LAND HELD BY; DEEDS, CONSTRUCTION OF.

1. The Act of Congress of March 3, 1887, prohibiting aliens from holding real estate, applies only to titles acquired after the passage of the act, and only then in a direct proceeding by the Attorney General to enforce the forfeiture to the Government.
2. Where E. held the legal title to land in trust for a syndicate of which S. was a member and executed to S. a deed of a part of his, S.'s, interest in order that S. might convey it to B., but before the transaction was consummated by such conveyance, B. agreed to purchase S.'s entire interest, and thereupon the deed from E. to S. was cancelled in order that E. might convey the whole of S.'s interest directly to B., it was *held*, that the deed from E. to S. was to be regarded as a nullity and that the legal title to S.'s interest still remained in E. who was bound to convey it to B. upon S.'s direction so to do.

No. 121.   Submitted October 19, 1893.—Decided November 8, 1893.

HEARING on a demurrer to a bill in equity to compel the conveyance of an interest in real estate, certified by an equity term of the Supreme Court of the District of Columbia to the General Term of that court to be heard in the first instance, and transferred to this court by operation of law.

THE COURT in its opinion stated the case as follows:

Henry Johnson, trustee, and the Land Company of New Mexico, filed this bill in the Supreme Court of the District of Columbia, September 6, 1888, to procure a conveyance to it by Stephen B. Elkins of an interest in a large tract of land in New Mexico. As the case is to be determined upon the demurrer to the bill, it will be stated in the language of the bill itself, as follows:

" 1. The plaintiff, Henry Johnson, is a resident of London, England, and sues as trustee, and his co-plaintiff, the Land Company of New Mexico, is a body corporate duly organized under the laws of the United Kingdom of Great Britain and Ireland and sues in its own right.

" 2. The defendant, Stephen B. Elkins, is a resident of the State of West Virginia, and is sued in his own right and also as trustee under the trusts hereinafter set forth. The defendant, Samuel S. Smoot, is a resident of this District, and is sued in his own right. The defendant, Benjamin F. Butler, is a resident of the State of Massachusetts, and is sued in his own right. The defendant, Paul Butler, is a resident of the Territory of New Mexico, and is sued in his own right and also as trustee. The defendant, Thomas B. Catron, is also a resident of the Territory of New Mexico, and is sued in his own right. The defendant, Eliud N. Darling, who is sued in his own right, resides in the District of Columbia. The defendant, Bronson Murray, is a resident of the State of New York, and is sued as the executor or administrator of T. Rush Spencer, deceased.

" 2½. The Union Land and Grazing Company of New Jersey is a corporation organized under the laws of New Jersey.

" 3. That by an agreement in writing, dated the 18th day of November, 1870, between the defendants, Stephen B. Elkins, Samuel S. Smoot, Thomas B. Catron, Eliud N. Darling, and T. Rush Spencer, the last named now deceased, the said defendants, Stephen B. Elkins and Thomas B. Catron, bound themselves to purchase an interest of the original grantees their heirs and assigns in the grant of land commonly known as the Mora Grant, situated partly in the county of San Miguel, and partly in the county of Mora, in the Territory of New Mexico, and known as claim No. 32, in the office of the Surveyor-General of the said Territory, and confirmed by the act of Congress approved June 21, 1860. That by the said agreement it was provided, that the parties thereto were all to share equally in the profits of the said purchase, or in case it should not be deemed expedient to sell said grant, each of the said parties was to have an equal number of acres in the portion or quantity of said grant that might be purchased, whether it be all or part of the said grant; the party or parties to whom the deeds of the

said grant might be made, binding themselves to convey to the remaining parties an undivided fifth part of whatever of said grant might be purchased under said agreement. And the said agreement contained other stipulations, including one providing that no sale of said grant, or that part that might be purchased, should be made unless four of the parties thereto should give their consent in writing that such sale should be made and consummated. In pursuance of the said agreement the interest of divers of the original grantees of said grant were purchased or acquired by or in the name of the defendant, Stephen B. Elkins, and he so acquired such interest as trustee for himself and the other parties to the said agreement.

" 4. The said plaintiff company by the several assurances hereinafter detailed, purchased and became the owner of the interest of the defendant, Samuel S. Smoot, in said grant.

" 5. By an agreement in writing dated the 5th of December, 1871, between the defendants, Samuel S. Smoot and one William Blackmore, reciting that said Blackmore had agreed with the said defendant Smoot to purchase a one-sixth interest of the whole grant, it was provided by said agreement as follows:

" Said William Blackmore was within two months to pay to the said Samuel Smoot $5,000, and the latter with all necessary parties should convey to the said Blackmore at the same time as a conveyance was made to the said Samuel S. Smoot, one-sixth share and interest in the said grant, which one-sixth interest was guaranteed to amount to not less than one hundred and thirty-eight thousand acres. The said sum of $5,000 was duly paid by the said William Blackmore to the said Samuel S. Smoot in January, 1872.

" 6. The said William Blackmore, for the purpose of having the legal title of the one-sixth of the said tract of land vested in him in accordance with said agreement, requested the said Smoot to obtain from the defendant Elkins, the conveyance of the legal title to his and said Smoot's undivided fifth of said land, in order that the said Smoot might immediately after convey the one-sixth interest of said grant to

the said Blackmore in conformity with said agreement, and thereupon on the 17th day of September, 1873, the defendant Elkins signed a deed purporting to convey to the defendant Smoot, and his heirs, an undivided interest then standing in the name of the defendant, Stephen B. Elkins, in the said grant, the said conveyance being made as one step in the proceeding whereby the said Smoot might immediately transfer to the said Blackmore, the interest by Smoot's said agreement of December 5th, 1871, agreed to be conveyed to said Blackmore. But before that transaction was completed by a conveyance from Smoot to Blackmore, there were further negotiations between the defendant Smoot and the said Blackmore, looking to the purchase by the said Blackmore of the whole of the said Smoot's one-fifth undivided interest in the said tract for a further consideration of $6,000, and upon this state of the case the conveyance from Elkins to Smoot, which had at first been proposed and intended, became no longer necessary, and on the 27th of November, 1874, the said deed of September 17th, 1873, from said Elkins to said Smoot was, by the consent of all the parties in interest, and for the purpose of carrying out the object and intent of said parties, returned and surrendered to said Elkins and the following endorsement made thereon:

"'November 27th, 1874. This has been surrendered by the within named S. S. Smoot to the within named S. B. Elkins, on the understanding that the interest of the said S. S. Smoot in the Mora Grant, is held by the said S. B. Elkins subject to the agreement between William Blackmore and said S. S. Smoot, of the 5th of December, 1871.'

"The said memoranda or endorsement was signed by both the defendants, S. S. Smoot and S. B. Elkins, and the said deed was delivered to and retained by the said defendant Elkins.

"7. On the 2d day of December, 1874, the negotiation for the purchase by the said Blackmore of the whole of the said Smoot's interest in the Mora Grant for a further sum of $6,000 was consummated and witnessed by agreement in writing as follows:

"'Mora Grant.—S. S. Smoot agrees in consideration of his liability of December 5th, 1871, to convey to William Blackmore his interest in the Mora Grant or procure a conveyance thereof to him, and the said William Blackmore agrees to pay said Smoot for such conveyance and interest the sum of $6,000, and to remit the same by cable from London within one week of his arrival there. New York, December 2, 1874. Samuel S. Smoot.'

" 8. In pursuance of said agreement, said William Blackmore duly remitted $6,000 to Messrs. Lewis Johnson & Co., bankers, at Washington, to be paid to the defendant Smoot, for the remaining part of his interest on his procuring and handing to them an undertaking in writing from the defendant Elkins to convey to the said William Blackmore, the said defendant Smoot's, interest in the Mora Grant. Thereupon on the 2d of February, 1875, the defendant S. S. Smoot delivered to the defendant S. B. Elkins the following paper:

"'Washington, February 2d, 1875.
"'Hon. S. B. Elkins,

"'My Dear Sir: Under and in pursuance to an agreement made and entered into between yourself, myself, E. N. Darling, T. B. Catron, and T. Rush Spencer, having date the 18th of November, 1870, to purchase the Mora Grant in New Mexico, and under the said agreement a portion has been purchased and the deeds made to you as trustee for myself and your associates. I hereby direct you to convey under said agreement all of my right, title and interest in said grant, being one-fifth of all now standing in your name, to William Blackmore, Esq., of London, England. Your compliance with this request will release you from all responsibility to me under said agreement. This transfer is made by virtue of a written contract, dated December 2d, 1874, and verbal understanding had with William Blackmore about said interest to be fixed in the future.

"'Very truly yours,
SAMUEL S. SMOOT.'

"The defendant, S. B. Elkins, thereupon wrote and delivered to Messrs. Lewis Johnson & Co., bankers, as agents for the said Blackmore, a letter as follows:

"'House of Representatives,
"'Washington, D. C., Feb. 2d, 1875.
"'William Blackmore, Esq.,

"'Sir: By letter of even date herewith S. S. Smoot has directed me to convey to you his entire interest in the Mora Grant now in my name, which I will do when so required.
"'Very respectfully,

S. B. Elkins.'

"In reliance upon the letter above mentioned Messrs. Lewis Johnson & Co., as agents of said William Blackmore, on or about the 2d day of February, 1875, paid the said $6,000 to the defendant, S. S. Smoot.

"9. The said William Blackmore by the contract in writing evidenced by the letter of said William Blackmore of date of the 15th day of March, 1872, directed the said Smoot to convey an undivided one-twelfth part of the said grant to John Horatio Lloyd and Cyrus Martin Fisher, and the said S. S. Smoot by note in writing signed by him and addressed to the said Lloyd and Fisher, undertook and agreed that one-twelfth interest in said grant should be conveyed to them as trustees of the syndicate for the purchase of land in New Mexico, and by deed dated 28th of May, between said Lloyd and Fisher, hereinafter to be called trustees of the first part, William Blackmore of the second part, and the several persons and firms whose names were written in the first syndicate and thereafter called the syndicate of the third part, recited that the said S. S. Smoot had agreed with the said William Blackmore to convey or cause to be conveyed to the trustees a one-fifth interest in the Mora Grant, which was by the said deed agreed and declared and the trustees did acknowledge and declare, that they would stand seized

and possessed of the interest in all and singular the lands and estates ·and interest in the Territory of New Mexico which were or might be vested in them upon the trust therein mentioned, which in substance were for .the payment of· the trusts and for the adjustment of certain differences which might arise between the syndicate and William Blackmore and ultimately for the benefit of the syndicate.

" 10. The said Cyrus Martin Fisher died in the year 1873; and thereafter, by deed dated the 19th day of June, 1875, George Gunnel Newman was appointed a trustee instead of the said Fisher, and .the property was vested in said John Horatio Lloyd and George G. Newman as trustees for the syndicate, and the said Blackmore by said deed conveyed all of his interest in the said grant to the said Lloyd and Newman, trustees. The said William Blackmore on the 12th day of April, 1878, died. By deed dated the 21st day of April, 1879, the said John Horatio Lloyd and George Gunnel Newman conveyed said interest in the Mora Grant to the plaintiff, Henry Johnson, the secretary and trustee for the plaintiff company and the members of the syndicate which became incorporated as the plaintiff company.

" 11. In and after the year 1877, the defendant, Stephen B. Elkins, stated to the defendant, William Blackmore, that he was engaged in a partition suit in relation to the said grant and that until such suit was terminated it was undesirable that he should make any conveyances of any interest in the grant to the said William Blackmore. The said Stephen B. Elkins being advised of the ownership by the plaintiff company of the one-fifth interest of the said S. S. Smoot in the Mora Grant, called upon the said plaintiff company for the sum of $2,500 as its proportion of the expenses incurred in the suit for the partition of the Mora Grant, and the plaintiff company paid the $2,500, as requested. The plaintiff company shows that it was and is the equitable owner of the one-fifth undivided part of the said property which had been transferred to the said Blackmore by the said defendant Smoot, and that the defendant Elkins

recognized the equitable ownership thereof of the plaintiff company, and was ready to convey the same to the said plaintiff when requested so to do.

"12. And the plaintiffs further show that when the said defendant Elkins was required to make the said conveyance of the said interest he, on the 30th day of April, 1885, declined so to do upon the following, amongst other grounds:

"First. That he had been directed by the said Smoot not to make the said conveyance. Second, that he has been informed and advised that Smoot by deed from himself and wife had conveyed the said interest to one Paul Butler in consideration of the sum of $10,000. Third, that he was advised that as matter of law the conveyance by him to Smoot has divested him of the legal title, and for these and other reasons the defendant Elkins declined to make the deed to the plaintiff company without the direction of a court of competent jurisdiction.

"13. And the plaintiffs show in respect to the aforesaid conveyance from Smoot and wife to Butler that they are informed and upon such information charge that the said S. S. Smoot, being indebted to the defendant, Benjamin F. Butler, in the sum of $6,000, or thereabouts, undertook to assign his interest and to convey his equitable title to this one-fifth interest (which had been theretofore assigned to the said Blackmore) as a security for payment of the said $6,000, the deed, however, reciting that it was an absolute conveyance and stating a consideration of $10,000, and the plaintiffs are informed and believe, and so charge, that the defendant Smoot, having obtained by fraud the said money from the said Benjamin F. Butler, the said Butler threatened to criminally prosecute him for the same unless he, the said Smoot, should make the said deed to the said Paul Butler, wherefore the plaintiffs say the transaction was null and void. The said deed from said Smoot to said Butler is dated the 17th day of July, A. D. 1882, and is recorded in Book A, pages 507 to 512, inclusive, of the land records of the county of Mora in the Territory of New Mexico, a true

copy of which is annexed, marked 'Plaintiff's Exhibit, A, No. 1.'

" 14. And the plaintiffs show that the said conveyance by Smoot and wife to Butler was one in which no present consideration passed, and, therefore, the said Butler was not a purchaser for value.

" 15. And the plaintiffs are informed, and upon such information charge, that the said B. F. Butler and Paul Butler well knew that the said defendant, Smoot, at the time of said conveyance did not have a legal title to the property and had no equitable or legal interest in the said property, and took the said conveyance with notice of that fact. The defendant, The Union Land and Grazing Company, derives its title through mesne conveyances from Paul Butler, and through Paul Butler from S. S. Smoot. The real parties in interest composing said company, and those through whom they claim having at the time of said conveyances to them respectively, full notice of all the equities of the plaintiffs as herein stated.

" 16. And the plaintiffs show that whatever equity the said Butler might have acquired under said deed, that it is subsequent to the equity acquired by the plaintiffs; and further, that if the said Butler claims to have the legal title because of the aforesaid deed from the defendant, Elkins, then the said Butler had notice of the circumstances under which the said deed was made, the purpose for which it was made, and the surrender thereof, and, therefore, is estopped as much as the defendant Smoot is estopped from claiming that the said deed vested the legal title in the said Smoot."

The special prayers were that defendant Elkins be directed to convey to complainant the one-fifth interest in the Mora Grant, which Smoot sold to Blackmore; that Butler and Smoot be enjoined from setting up title under the deeds of July 17, 1882, and September 17, 1873, and that they be annulled.

The defendants entered a demurrer to the bill in the special term, and the cause was then certified by the justice

therein presiding to the General Term, to be heard in the first instance. Depending there unheard at the time the act creating this court was passed, it has, in accordance with the terms thereof, been transferred here for decision.

*Mr. Franklin H. Mackey* and *Mr. H. O. Claughton* for the complainants:

1. The deed from Elkins to Smoot, dated September 17, 1873, was a nullity. *Holmes* v. *Trout,* 7 Pet., 171.

2. Even if such deed was not a nullity, but did divest Elkins of the legal title, and vested the same in Smoot, yet Smoot, and those claiming through him, are estopped from claiming under that cancelled and surrendered deed. Bigelow on estoppel (4th edition), pages 559-641; 1 Greenleaf (15th edition), Sec. 265, Note 3; *Farrar* v. *Farrar,* 4 N. H., 191; *Commonwealth* v. *Dudley,* 10 Mass., 403; *Holbrook* v. *Tirrell,* 9 Pick., 104; *Lawrence* v. *Stratton,* 6 Cush., 163; *Howard* v. *Massengale,* 13 Lea, 577; *Duke* v. *Spangle,* 35 Ohio State, 119; *Trull* v. *Skinner,* 17 Peck, 213; *Stanley* v. *Epperson,* 45 Tex., 645.

3. The defense of laches on the part of complainants cannot prevail. Laches not only presupposes lapse of time, but the existence of circumstances which impute negligence, or the absence of vigilance in the prosecution of a claim for equitable relief. That this is a bill against a trustee of an express trust, who has never denied the right of the plaintiffs. As to him, there can neither be the bar of the statute of limitations, nor the defense of laches, for time does not run against an express trust. The refusal of this trustee to convey the title which he holds in trust, does not assert a denial of the right of the plaintiffs so to convert the express trust into a constructive trust. Therefore, the defendant Elkins cannot rely upon laches as a defense. As to the other defendants, Paul Butler and the corporation defendant, this is a claim of right to real estate, and if the claim were at law it would not be barred until the expiration of twenty years from the assertion of the adverse claim. Under ordinary circumstances

courts of equity adopt the period of the legal bar. *Elmendorf* v. *Taylor*, 10 Wheat., 152; *Gadden* v. *Kimmell*, 99 U. S., 201; *Miller* v. *McIntire*, 6 Peters, 61; *Hall* v. *Law*, 101 U. S., 461; *Hunt* v. *Wickliffe*, 2 Pet., 201; *Peyton* v. *Stith*, 5 Pet., 485; *Brosman* v. *Wathen*, 1 How., 189; *Moore* v. *Green*, 19 How. 69. Where no statute of limitation directly governs the case, courts of equity act upon their own inherent doctrine of discouraging antiquated demands, by refusing to interfere where there has been *gross laches*. *Wagner* v. *Bond*, 7 How., 234; *U. S.* v. *Moore*, 12 How., 209; *Badger* v. *Badger*, 2 Wall., 87; *Gadden* v. *Kimmell*, 99 U. S., 201. But the defendants, Paul Butler, and the Union Land and Grazing Company, cannot defend upon the ground of laches, as it is well settled that a purchaser of property with notice of an equitable claim prior to his own cannot defend a suit in equity on the ground of laches, for a time less than the statute of limitations. The demurrer in this case admits such knowledge. *Insurance Co.* v. *Eldridge*, 102 U. S., 545.

*Mr. O. D. Barrett* for the defendants:

1. Equity will not aid a foreign corporation to acquire the legal title to real estate in a territory of the United States in contravention of the policy of the United States as shown by the act of Congress of March 3, 1887, prohibiting aliens from acquiring or holding real estate in this country.

2. The act of S. S. Smoot, in returning to S. B. Elkins, on the 27th day of November, 1874, the deed which he had received from Elkins, with the indorsement made thereon as set out in the sixth paragraph of the complainant's bill, was ineffectual to revest the title of the land in question in said Elkins. It was not a cancellation of the deed and even if it had been cancelled by Smoot, by tearing or burning or destruction in any other way, still it would not have revested the title in Elkins no more than the wilful destruction of a certificate of marriage will effect a divorce, or a cancellation of the marriage evidenced by the certificate. A deed to land is not the title, it is simply the evidence of title, and the

destruction of the evidence of a thing does not destroy the thing itself. *Lawton* v. *Gordon*, 34 Cal., 36; *Killey* v. *Wilson*, 33 Id., 693; *Rifner* v. *Bowman*, 53 Pa. St., 318; *Gugins* v. *Van Gorder*, 10 Mich., 524; *Holbrook* v. *Tirrell*, 9 Pick., 105; *Botsford* v. *Moorehouse*, 4 Conn., 553; *Bolton* v. *Bishop*, 2 H. Black., 259; *Gilbert* v. *Buckley*, 5 Conn., 264; *Jackson* v. *Anderson*, 4 Wend., 483.

Mr. Justice SHEPARD delivered the opinion of the Court.

1. The first point made on the demurrer is, that complainant, shown to be a foreign corporation on the face of the bill, cannot maintain the action because prohibited from acquiring title to land by act of Congress of March 3, 1887. This act prohibits aliens and corporations not created under the laws of the United States, or some State or Territory thereof, "to hereafter acquire, hold or own real estate so hereafter acquired, or any interest therein, in any of the territories of the United States, or in the District of Columbia, except such as may be acquired by inheritance, or in good faith in the ordinary course of justice in the collection of debts heretofore contracted." U. S. Stat. at Large, Vol. 24, p. 476.

It is not directly alleged in the bill that the complainant corporation acquired its title before the passage of the act, though such is the inference reasonably to be deduced from the language used. And here we think it proper to add, that this bill throughout leaves too much to inference that which is capable of precise statement. If the title were acquired before the passage of the act, that of course would settle the question. But if acquired since, the defendants cannot set up the forfeiture of the statute in bar of complainant's right. The statute is not self-executing. Section 3 provides that property so held or acquired shall be forfeited to the United States, and makes it the duty of the Attorney-General "to enforce every such forfeiture by bill in equity or other proper process." Until this be done, the title is not subject to attack by others. *Cross* v. *De Valle*,

1 Wall., 5 ; *Governeur's Heirs* v. *Robinson*, 11 Wheat., 333 ; *Osterman* v. *Baldwin*, 6 Wall., 116 ; *Phillips* v. *Moore*, 100 U. S., 208.

2. It is next claimed that the allegations in the ninth and tenth paragraphs of the bill are too indefinite to enable the court to determine whether complainant Johnson holds the estate in his own right or as trustee for a syndicate, or as trustee for the Land Company. While lacking again in precision, which would have avoided the raising of this question, we think that, taking the allegations as a whole, they show that the title made to Johnson was in trust for the Land Company.

3. The objection to the third paragraph of the bill is not well taken. It appears plainly enough from the recital of the original contract between Elkins, Smoot and others for the purchase of the Mora Grant, that it was contemplated the title to the lands, as purchased, should be taken in the name of one of the number, who should hold one-fifth of the same in trust for each of his four associates. Hence, the clause binding him (whoever might be selected) to convey an undivided one-fifth to each of the four others. This has no reference to any disposition that might be made by any one of the members of his own interest under the contract.

The same may be said also of the provision " that no sale of said grant, or that part that might be purchased, should be made unless four of the contracting parties thereto should give their consent in writing that such sale should be made and consummated." This seems to be a limitation of the powers of the one holding the title in trust for all. It would require a plain and unmistakable declaration to that effect (even if that could be enforced) to restrict each individual's power of alienation of his own interest.

We think also that the allegations of the fifth paragraph are sufficient to show that the contract therein alleged with Smoot contemplated a sale by him of so much of his one-fifth share as would amount to one-sixth of the whole grant;

and this is made perfectly clear by the allegations of the sixth paragraph.

4. The Statute of Limitations does not apply to the case made by the bill of the complainants. The trust is direct and the case is one of exclusive equity jurisdiction. There has not been such laches by complainant as to bar him of relief in equity upon the facts stated. *Elmendorf* v. *Taylor*, 10 Wheat., 152 ; *Badger* v. *Badger*, 2 Wall., 87 ; *Insurance Co.* v. *Eldredge*, 102 U. S., 545.

5. The allegations of the bill of knowledge by Butler and those who claim under him of the equitable rights of complainant in the premises are sufficiently definite.

6. The same may also be said of the charge that Butler obtained the conveyance from Smoot by threats of prosecution for obtaining money through fraudulent representations. It was not necessary to allege the particular facts constituting the alleged fraud practiced by Smoot upon Butler, in order to see if they would make a case sufficient to support a prosecution for crime. The fraud or crime is a collateral fact, an incident, or matter of inducement only to the main question, which is, Did Butler obtain the deed from Smoot through threats of criminal prosecution? However, if Butler did obtain the deed from Smoot in this manner and upon this consideration, complainant cannot avail itself of that fact to annul it. The only bearing, therefore, that this matter can have is in connection with the fourteenth paragraph, where it is charged that Butler is not a purchaser for value.

7. The important question raised by the demurrer lies in the allegations of the sixth, seventh and eighth paragraphs of the bill. It is contended that the deed made by Elkins to Smoot passed the legal title to him, which remains in him notwithstanding the surrender of the deed without record and the endorsement of the terms of surrender thereon signed by both Elkins and Smoot.

We shall assume that the deed was not recorded, because in the absence of allegations concerning this, we must pre-

sume that the common law prevails in New Mexico. It is strange, however, that the bill should be silent with respect to a fact so important and susceptible of such easy and certain ascertainment.

The general rule as to the effect of the cancellation or mutilation of a deed to land is well stated by the chief justice of this court in the opinion in *Fitzgerald* v. *Wynne, ante*, p. 120, as follows: " It is certainly a general rule, that where a party makes a perfect deed of conveyance of an estate in land, that is to say, where he *executes and delivers* a deed of conveyance *as his final act*, the estate in the property, if equitable, at once passes to the grantee, equally as it would on a conveyance of a legal estate, unless the operation of the deed be restrained by statute. The grantor cannot revoke such deed, unless he has reserved to himself a power of revocation. And where such deed has been destroyed, by the grantor, after delivery to the grantee, secondary evidence of its contents may be given, and the deed set up against the grantor and his heirs and devisees, and against volunteers claiming under him. . . The deed here was executed and delivered as the final act of the grantors, and the equitable interest in the property thereupon passed and became vested in the grantee, and that interest was not divested by the subsequent unauthorized obliteration or erasure of the signatures of the grantors from the deed."

It will be noticed from this guarded statement of the rule, in a case, too, entirely different from this one, that it is not without limitations and exceptions. From the allegations of this bill it appears that the deed from Elkins to Smoot of September 17, 1873, was made at Blackmore's request, and for the sole purpose of enabling Smoot to convey to Blackmore the portion of his interest in the grant according to their then existing contract. Elkins made the deed for this purpose and sent it to Smoot. Blackmore and Smoot extended their trade for the land and no deed was made by Smoot to him, as originally contemplated, on that account.

As a result of the additional negotiations Blackmore purchased all of Smoot's interest and paid him for it. The ob-

ject of Blackmore seems at first to have been to obtain a perfect legal title to his partial interest and hold it independently of Smoot—who still then had a small interest—and his associates and discharged of the trust in Elkins. Having at last purchased the whole of Smoot's interest, he seems to have changed his intention and to have concluded to take Smoot's place in the syndicate and leave the legal title as before in Elkins. It appears, therefore, that the object of the deed was not to vest a title in Smoot except as a means to enable him to vest one in Blackmore. He was to be merely a conduit of the title to its ultimate destination. Upon these facts we must hold that the legal title to the land in controversy is still in Elkins. The facts as alleged bring the case within the exception to the general rule established in *Holmes* v. *Trout*, 7 Pet., 171, the facts in which are quite similar. McLean, J., in delivering the opinion of the court, said: "They allege expressly that the deed executed by Short to Holmes, never having been recorded, was delivered up and cancelled by those who had full powers on the subject, and that another deed was executed by Short upon proper authority, vesting the fee to one moiety of the land in Breckenridge, and the other in the complainants. . . . The principle is admitted that the mere cancelling of a deed does not reinvest the title in the grantor under the laws of Kentucky; but, under the circumstances of this case, the court are clear that the deed to Holmes must be considered as a nullity. . . . The conveyance may have been made with the sole view of enabling Holmes to convey to others who had purchased; and a different arrangement being made, as the deed had not been recorded, and Holmes not having acted under it, it was probably surrendered, with all other papers relating to the land, to Breckenridge, by those who had full power to do so, as stated in the amended bill; on which surrender Short executed the deed to the complainants and Breckenridge. Whatever may have been the facts in regard to the delivery of the deed to Holmes and its surrender, this court have no difficulty in treating it as a void instrument, under all the circumstances of this case."

This doctrine, if it needed any support, would find it in the following well-considered cases, in the majority of which, under facts nearly allied, it was held that the surrender or destruction of the deed operated to recreate a legal title in the grantor by estoppel. *Commonwealth* v. *Dudley*, 10 Mass., 403; *Holbrook* v. *Tirrell*, 9 Pick., 105; *Lawrence* v. *Stratton*, 6 Cush., 163; *Trull* v. *Skinner*, 17 Pick., 213; *Farrar* v. *Farrar*, 4 N. H., 191; *Howard* v. *Massengale*, 13 Lea, 577; *Faulks* v. *Burns*, 1 H. W. Green (N. J. Ch.), 250; *Stanley* v. *Epperson*, 45 Tex., 644.

It follows from what has been said that the demurrer must be overruled, with costs to the complainants, and the cause remanded to the Supreme Court of the District of Columbia, with direction to pass a decree overruling the demurrer, whereupon the cause will be proceeded with according to the practice of said court.

*Demurrer overruled.*