Mr. Justice GRIER
 

 delivered the opinion of the court,
 

 i The numerous eases in the books as to dismissing a chancery bill because of staleness, would seem to be contradictory if the dicta'of the chancellors are hot modified by applying them to the peculiar facts of the case under consideration. Thus, Lord Erskine, in an important case once before him, says.: “No length of time can prevent the unkennelling of a fraud.” And Lord Northington, in
 
 Alden
 
 v.
 
 Gregory,
 

 *
 

 with virtuous indignation against fraud, exclaims: “ The next question is, in effect, whether delay will purge a fraud? Never — while I sit here! Every delay adds to its injustice and multiplies its oppression.” . In our own court, Mr Justice Story has said:
 
 †
 
 “ It is certainly true that length of time is no bar to a trust clearly establishedand in a case where fraud is imputed and proved, length of time ought not,” on principles of eternal justice, to be admitted to repel relief.. On the other hand, it would seem that the length of time during which the fraud has been successfully concealed and practised, is rather an aggravation of the offence, and calls more loudly upon a court of equity to give, ample and decisive relief.”
 

 Now these principles are, no doubt, correct, but the qualifications with which they are stated should be carefully noted:
 

 ist. The trust must be “ clearly established.”
 

 2d. The facts must have been fraudulently and success
 
 *93
 
 fully concealed by the trustee from the knowledge of the
 
 cestui que trust.
 

 The case of
 
 Michoud
 
 v.
 
 Girod,
 
 cited hy the appellant’s counsel, is an example of the class in which the concealment of the fraud was the aggravation of the offence. The facts of the case were “ clearly established” by records and other written documents, and the court were not called on to found their decree on the frail memory or active imaginations of ancient witnesses, who may not be able, after a great lapse of time, to distinguish between their faith and their knowledge, between things seen or heard by themselves, and those received from family or neighborhood gossip, or upon that most unsafe of all testimony, conversations and-confessions, — remembered or imagined., — partially stated or wholly misrepresented. The fraudulent concealment was also clearly established. The heirs, who lived in Europe, were deceived by the false representations of the executor, and kept in total ignorance of the situation and value of the estate, having no other information on the subject than that communicated to them by him. The delay was not the consequence of any laches in the heirs, but was caused by the successful fraud of the executor, and was but an aggravation of the offence.
 

 But the case before us has none of the peculiar characteristics of those to which wo have referred. Eor more than twenty-five years the widoAV and heirs have acquiesced in this sale, and it is more than thirty since the administration account was settled, which is alleged to have been fraudulent. The guardian of the complainant, who approved the account, is dead; the widow died in 1855. Two of the heirs were of full age in 1831, and the. others afterwards. This bill was filed in 1858. The bill does not state the age of complainant. But at the time of filing his bill, he must have been over forty years of age.
 

 The whole transaction was public, ancl well known to the widow and the heirs, and their guardians. The purchase of the estate by the administrator could have been avoided at once, if any party interested disapproved of it. There was not and could not be any concealment of the facts of the
 
 *94
 
 case. 'The complainant claims' as assignee of his elder brothers and sisters, and uses them as witnesses to prove the alleged fraud after a silence of over thirty years. . They attempt to prove the signature of their mother to the documents on file in the court to be forged, and this after the death of the mother, who lived for twenty-eight years after the. transaction without complaint or allegation either that her - signature' was fraudulently obtained or forged. A daughter, who was twenty-three years of age when this sale was made, and had full knowledge of the whole tthnsaction, after near thirty years’ silence, now comes forward to prove that her concurrence and assent was obtained by fraud; and now, after the death of the guardian and the mother, who could have explained the whole transaction, the aid of a court of chancery is demanded to destroy a title obtained by judicial sale, after-the parties complaining, with full knowledge of their rights, have slept upon them for over a quarter of a century.
 

 Now, the principles upon which courts of equity act in such cases, are established by cases and authorities too numerous for reference. The following abstract, q\ioted in the words used in various decisions, will suffice for the purposes of this decision:
 

 “ Courts.of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation which govern courts of law in like cases, and this rather in obedience to the statutes than by analogy.
 

 “ In manjr other cases they act upon the analogy of the like limitation at law. ‘ But there is a defence peculiar to courts of equity founded on lapse of time and the staloness of the claim, where no statute of limitation governs the case. In such cases, courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance
 
 *95
 
 or impediment, caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the chancellor.
 

 “ The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer."
 

 The bill, in this case, is entirely defective in all these respects. It is true, there is a general allegation, that the “fraudulent acts were unknown'to complainant till within five years past,” while the statement of his case shows clearly that he must have known, or could have known, if he had'chosen to inquire at any time in the last thirty'years oik his life, every fact .alleged in his.bill. That his mother was entitled to dower in the land if the sale was set aside, was no impediiiient to his pursuit of his rights, while her death may have removed the only witness who was able to prove that his complaint of fraud was unfounded, and that it was by the consent and desire of the family that the property was kept in the family name by the only one who was able to advance the money to pay the debts of the deceased; a fact fairly to be presumed from her silence and acquiescence for twenty-four years.
 

 The court- below very properly'dismissed this bill, and refused to examine into accounts settled by the courts with the knowledge of all parties concerned, and commencing forty years and ending thirty years ago, and to grope after the truth of facts involved in the mists and obscurity consequent on such a lapse of time.
 

 If a further reason were required for affirming this decree, it. might be found in the statute of Massachusetts, declaring that “ actions for land sold by executors, administrators, or guardians, cannot be maintained by any heir or person
 
 *96
 
 claiming under tbe deceased or intestate, unless the same be commenced within five y ears next after the sale. But we prefer to affirm the decree for the- reasons given, without passing any opinion on the effect of this statute.
 

 Decree aeeirmed with costs.
 

 *
 

 2 Eden, 285.
 

 †
 

 Prevost v. Gratz, 6 Wheaton, 481.