UNITED STATES v. PUGET SOUND TRACTION, LIGHT & POWER CO. et al.

(District Court, W. D. Washington, N. D. June 20, 1914.)

No. 28.

PUBLIC LANDS (§ 120*)—SUITS TO ANNUL PATENTS—LIMITATION—AVOIDANCE FOR FRAUD—PLEADING.

Act March 3, 1891, c. 561, 26 Stat. 1099 (U. S. Comp. St. 1901, p. 1521) § 8, which provides that suits by the United States to annul patents to public lands thereafter issued shall only be brought within six years after the date of the issuance of such patents is a self-imposed statute of limitation, to avoid which, on the ground of fraud, the government must allege specific facts showing that its failure to discover the cause of action within the statutory period was due to concealment by the adverse party or that the fraud is of a self-concealing nature, and the failure to discover it was not due to negligence or want of diligence on the part of the government.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*]

In Equity. Suit by the United States against the Puget Sound Traction, Light & Power Company and others. On motion to make bill more definite and certain. Motion granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Clay Allen, U. S. Dist. Atty., and Winter S. Martin, Asst. U. S. Atty., both of Seattle, Wash.

Clinton W. Howard, of Bellingham, Wash., and James B. Howe, of Seattle, Wash., for defendants.

NETERER, District Judge. This action was commenced by the United States on February 9, 1914, seeking the cancellation of a patent to public lands issued to the defendant Cornwall on June 30, 1904. The bill alleges that the land in question is located on the north fork of the Nooksack river and upon Wells creek at its confluence with the river, and comprises 66.35 acres in Whatcom county, Wash., and within the boundaries of the Washington National Forest; and that the land is of great value as a water power site. It is alleged that the defendant Cornwall and three other persons therein named pretended to make mineral discoveries upon the land, and thereafter filed fraudulent notices of mineral locations, knowing that the land was nonmineral in character and not subject to entry under the laws of the United States; that the defendant Cornwall in 1902 procured conveyances from the other parties of the land embraced in their mining locations; and that it was at all times his intention to procure the group of mining claims for the purpose of utilizing the water power resources of Nooksack river and the power sites adjacent thereto. The bill alleges that, in the application made by the said defendant on April 7, 1903, the false representation was made that labor had been performed and improvements made of the value of $10,142.67 on the claims for mineral development, and represented that gold and silver had been found in paying quantities, and that the land was more valuable for its minerals than for any other purpose, all of which representations were false and known to be false by the said defendant; but that the plaintiff believed the representations, and, relying upon them, issued its patent on June 30, 1904. On September 12, 1905, the defendant Cornwall conveyed the group of claims to defendant Bellingham Bay Improvement Company; and on the 22d day of September, 1905, the Bellingham Bay Improvement Company conveyed said claims to J. P. Stearns, who conveyed the same to the defendant Whatcom County Railway & Light Company on December 4, 1905; and the last-named defendant conveyed the lands to the defendant Puget Sound Traction, Light & Power Company on September 3, 1912. It is alleged that all of the said conveyances were made and received with full knowledge of the fraudulent representation by which title had been obtained from the government. The bill further states that the defendants began the erection of a power plant upon the said lands in 1905; and that, upon the completion thereof, power wires and power conduits were constructed to the city of Bellingham, for the purpose of utilizing the electrical power generated at the power plant in Bellingham and adjoining towns. The defendant Puget Sound Traction, Light & Power Company, it is alleged, is the present owner of and in possession of the said power plant, and is engaged in the utilization of the electrical power for commercial purposes generated thereby. The bill further alleges:

"By reason of the continuous character of the fraudulent acts complained of and of the continuous character of the concealment, the plaintiff has at all times herein down to the month of June, 1910, remained in ignorance of the true character of the real property described herein."

Section 8 of the Act of March 3, 1891, provides:

"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."

The defendants have moved the court to strike or to require the plaintiff to make more definite and certain various portions of the bill. The necessity of considering or disposing of the objections to the specific portions of the bill may perhaps be obviated by considering the following general motion:

"These defendants move for a further order requiring the plaintiff to make its claim more definite and certain and to file a better and further statement of its claim setting forth the facts instead of conclusions of law, showing why its claim against these defendants is not barred by the statute of limitations."

May the government avoid the bar of the statute of limitations by a mere allegation of failure to discover the fraud upon which the action is based within the statutory period? If so, the motion should be denied. If, on the other hand, the government must show that the failure to discover was due to a concealment of the cause of action by the other party, or at least that the fraud is of self-concealing nature, and the government in failing to discover it was not negligent or lacking in diligence, the motion should be granted.

The statute here in question was held by District Judge Lewis in United States v. Exploration Co. (C. C.) 190 Fed. 405, to be an absolute bar to an action by the government after the expiration of the statutory period. This holding was reversed by the Circuit Court of Appeals of the Eighth Circuit (203 Fed. 387, 121 C. C. A. 491), which held that the statute was subject to the equitable rule that where the failure to discover the fraud was due to concealment by the other party, or was not chargeable to the neglect or lack of diligence of the other party, the statute would not commence to run until the discovery of the fraud. A similar holding in a similar case was made by the Circuit Court of Appeals of the Ninth Circuit in the case of Linn & Lane Timber Co. v. United States, 196 Fed. 593, 116 C. C. A. 267; Id., 203 Fed. 394, 121 C. C. A. 498. In both of these cases the patents were sought to be annulled on the ground that the entries were made for the benefit of others, and the concealment charged was the withholding from record of deeds transferring the land. The fact that deeds are withheld from record is a "badge of fraud" and is sufficient to prevent the statute from running even as against private individuals. 20 Cyc. 446; McAlpine v. Hedges (C. C.) 21 Fed. 689.

The most favorable statement of the rule for those seeking to avoid the bar of the statute is that in Bailey v. Glover, 21 Wall. 342, 347 (22 L. Ed. 636):

"In suits in equity where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that, where the ig-

norance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief, provided suit is brought within proper time after the discovery of the fraud. We also think that, in suits in equity, the decided weight of authority is in favor of the proposition that, where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

But the party seeking to avoid the bar of the statute may not do so by general allegations of ignorance on his part, or fraud on the part of his adversary. The rule of pleading is thus laid down in Wood v. Carpenter, 101 U. S. 135, 141 (25 L. Ed. 807):

"In this class of cases the plaintiff is held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentations were discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.' Stearns v. Page, 7 How. 819, 829 [12 L. Ed. 928]. * * * A general allegation of ignorance at one time and knowledge at another are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, and how it was made, and why it was not made sooner." Hardt v. Heidweyer, 152 U. S. 547, 14 Sup. Ct. 671, 38 L. Ed. 548; Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Lansdale v. Smith, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. Ed. 219; Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. 418, 36 L. Ed. 134.

If the government be held to this rule when it seeks to avoid the bar of a self-imposed statute of limitations, then the allegations of the bill in this case are patently insufficient. There is no allegation in the complaint of specific acts of concealment by which the government was prevented, after the consummation of the fraud, from discovering the same; nor are any facts alleged from which the court would be justified in concluding that the government was not negligent or was not lacking in diligence in failing to make the discovery within the statutory period.

The allegation that the defendants commenced in 1905 "secretly and covertly" to construct a power plant is too vague and indefinite. The terms employed to show concealment are relative terms; and it is impossible to determine with what degree of secretiveness and covertness the work was done. What may appear to the pleader to be secret and covert may not be regarded as such by the court. In order to determine whether the work was done "secretly and covertly," the court should be acquainted with the facts upon which the pleader bases his conclusion that it was done in such a manner. Especially is this so when the act charged is not such as in its nature to suggest performance in a secret and covert manner. It is necessary that facts be stated rather than conclusions, not only so that the court may determine the sufficiency of the pleading, but also that the adverse party may know with what he is charged and how to answer it. The assertion that the work was "secretly and covertly" done, being purely a conclusion and no facts being stated to sustain it, must be disregarded. Straus v. Foxworth, 231 U. S. 162, 168, 34 Sup. Ct. 42, 58 L. Ed. 168.

The general allegation in the bill to the effect that because of the

"continuous character" of the acts complained of, and the "continuous character" of the concealment, the plaintiff remained in ignorance of the true character of the property until June, 1910, does not bring the plaintiff within the rule above stated. In its final analysis it is merely an allegation of ignorance at one time and knowledge at another. The fraudulent acts alleged in the complaint culminated in the issuance of the patent. The government's right of action at that moment arose. It is a concealment of this cause of action that is the material point to the inquiry here. Subsequent transfers made and received with the knowledge that the land was nonmineral in character and that patent thereto had been fraudulently obtained would not tend to conceal from the government the fact that the representations upon which the land had been obtained were false. Such allegations are material only to show that the various parties were not purchasers in good faith. Neither such transfers nor the acts of the defendants in using the land for other than mineral purposes subsequent to the issuance of patent have any tendency to conceal the cause of action, and the mere allegation the acts are of a continuous character does ont satisfy the rule of cause and effect, by which their sufficiency must be determined.

"No * * * light is thrown in which tends to show the relation of cause and effect, or, in other words, that the protracted concealment which is admitted necessarily followed from the facts and circumstances which are said to have produced it." Wood v. Carpenter, 21 Wall. 135, 139, 25 L. Ed. 807.

In paragraph 10 of the complaint, which the defendants have specifically moved to make more definite and certain, the following allegation is made:

"The defendants, P. B. Cornwall, Bellingham Bay Improvement Company, J. P. Stearns, and Whatcom County Railway & Light Company, and their officers and agents, falsely represented that certain bona fide mining improvements had been made on said real property. In truth and fact all the assessment and annual work, together with all the development work on said claims, including that on constructing or excavating tunnels, was not for the bona fide purpose of mining or developing the said claims, but for the covert and secret purpose of preparing the said lands for subsequent use as a water power site and thereafter constructing the said water plant as herein alleged."

It is manifest that the court cannot determine from this allegation when the representations alleged were made, by whom or to whom° they were made, or the method or means employed in making them. Nor are the representations set forth with that degree of definiteness and certainty which should characterize a pleading charging fraud. It appears from the bill that the parties were successive owners of the property. Representations made by defendant Cornwall, it might be inferred, would be prior to patent, since he held the land during that period. Such representations would be merged in the fraud which culminated in the issuance of the patent, and upon which the government's right to annul the patent would rest. Subsequent representations might amount to active concealment of this cause of action. It therefore becomes important to inquire just what representations were made prior and which were made subsequent to the issuance of the patent. The allegation contains no answer to this inquiry.

Such other general allegations as "that each of the said fraudulent acts and representations was and is a continuous and fraudulent act, and so intended by the above-named defendants and each of them," can neither supply the omission of specific acts nor make the acts which are alleged fraudulent or continuous acts of concealment, when they are not such in fact.

It is manifest, therefore, that, unless mere failure to discover the fraud will permit the government to avoid the bar of the statute of limitations, the bill must be made more definite and certain. The argument in favor of according plaintiff such a right is based upon the rule that laches is not imputable to the government, and that it is not bound by the negligence of its servants. The most emphatic statements of this rule have been made in cases where there was no self-imposed statute of limitations resting upon the sovereign. In United States v. Nashville, Chattanooga & St. Louis Ry. Co., 118 U. S. 124, 6 Sup. Ct. 1008, 30 L. Ed. 81, Judge Gray thus stated it:

"It is settled beyond doubt or controversy—upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided—that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound."

The statute here in question was enacted for the very purpose of binding the government. By its very terms it compels the government to suffer by the negligence of its agents or officials. If a patent is obtained fraudulently, and knowledge of the fraud is possessed by the government officials within the statutory period, and yet they negligently fail to bring an action to set it aside until after the period has expired, can we say that such negligence is not imputable to the government? To do so would be to deny the existence or binding force of the statute and to accomplish the repeal of a congressional enactment by the process of judicial construction. The statute is absolute in its terms. It says that actions to annul patents shall only be brought within six years of the date of their issuance. The equitable rule of concealed fraud, qualifying the absolute terms of the statute, was ingrafted upon it by judicial construction. It was, however, the rule as developed, defined, and expounded by courts of equitable jurisdiction, which was thus imported into the statute, and not an emasculated and mutilated remnant of that rule; a comprehensive legal principle, not a legal paradox. Equity recognizes no such doctrine as that the statute of limitations will be tolled by mere ignorance unaccompanied by a showing of due diligence or concealment of fraud. How, then, can it be read into the statute as a rule of equity?

Counsel for the government cite many authorities to the effect that where the fraud is of a self-concealing nature, and the injured party remains in ignorance without any fault or want of diligence on his part, the statute does not begin to run until discovery, though there may be no special efforts on the part of the other party to conceal it. This is the rule as quoted from Bailey v. Glover, supra. The very statement of that rule compels the conclusion that, if an injured party

is wanting in diligence, the statute begins to run against him from the commission of the fraud, and not from the date of discovery, even though the fraud may be of a self-concealing nature. Lant v. Manley, 75 Fed. 627, 21 C. C. A. 457.

Plaintiff cites the case of United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110, and contends that, under the holding in that case, the government had the right to rely upon the representations of the claimants as to the character of the land, and was under no necessity of making an independent investigation. In the Minor Case the particular point in controversy was the establishment of the original fraud in obtaining patent. Of course the government, in issuing the patent, had the right to rely upon the representations made by those seeking to obtain it. I apprehend that, in all cases where one party seeks relief on the ground of fraudulent representations on the part of another, he must show that he had a right to rely on the representation. 20 Cyc. 32, 33. The Minor Case would therefore be directly in point as establishing an essential element of the original fraud in obtaining the patent; that is, it would show that the government had a right to rely upon the fraudulent representations alleged to have been made in obtaining the patent. Does it relieve the government from the duty of showing that its failure to discover the fraud was not due to lack of diligence? The mere fact that a party has a right to rely upon a representation, and is therefore released from the necessity of making an independent investigation, does not release him from the necessity of showing that his failure to discover that he had been defrauded within the statutory period was not due to lack of diligence on his part. As to what would constitute due diligence on his part would depend upon the facts and circumstances of the case. A certain set of facts might call for affirmative action. Again a disclosure of all of the surrounding facts and circumstances in the light of which his conduct must be judged might be such that no affirmative action on his part would be demanded. In order to determine whether a party has exercised due diligence, it must first be known what was done by him and what were the facts and circumstances which called for action on his part or justified him in remaining inactive. It cannot be determined as an abstract matter that a certain course of inaction would constitute due diligence, merely because the party was under no necessity of acting at some prior period of time and under the state of facts then existing.

Neither do I think that it can be said that, because the government was under no duty to investigate these claims prior to the issuance of patent, it may be said as any absolute proposition that it would not thereafter under any circumstances be held to such a duty in order to show that it was not lacking in diligence in failing to discover a fraud which had already been perpetrated. I cannot think that the right of the government to rely upon representations by which a fraud was perpetrated upon it exists even after the fraud has been consummated to such an extent that the government is relieved of the necessity of showing due diligence where it has failed to discover the fraud. If such a holding should be adopted, the statute of limitations would be

practically nullified. Rare, indeed, would be the cases in which the statute could be applied. Those would be where a discovery was made, and the officers failed to do their duty in neglecting to bring an action within six years. It cannot be presumed that Congress had in mind only such cases as these. The policy of this statute, as of all statutes of limitations, was to prevent the bringing of actions when the evidence upon which they were based was impaired by time, and, for the sake of repose, to prevent the disturbance of claims to which time, at least, had given some sanctity. The statute would therefore accomplish very little of its object if it was held to apply only to cases where a discovery was made and no action was brought until six years thereafter. These would be only those cases where a breach of duty was committed by officials in failing to prosecute such actions, and it must be presumed that such cases would be few. The great bulk of cases for which this law was enacted would remain untouched. A new statute of limitations enacted by the court would be substituted for that enacted by Congress. The date would be changed from that of the issuance of the patent to that of discovery of the fraud, not in order to accomplish the presumed intent of the Legislature that an established rule of equity was incorporated therein, but regardless of such intent because no such rule as that contended for has ever been established either in the courts of law or equity.

I am therefore of the opinion that, when the government is seeking to avoid the bar of a self-imposed statute of limitations, it must allege facts showing that its failure to discover the cause of action within the satutory period was due to concealment by the adverse party, or that the fraud is of a self-concealing nature, and the failure to discover it was not due to negligence or want of diligence on the part of the government.

The bill will be amended as indicated in this opinion.