### UNITED STATES v. DIAMOND COAL & COKE CO.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1918.)

No. 5146.

1. .LIMITATION OF ACTIONS ⊚⟹100(10)—PUBLIC LANDS—PATENTS—SUIT TO CANCEL.

Under Act March 3, 1891, § 8 (Comp. St. 1916, § 5114), providing that suits to vacate patents hereafter issued shall be brought within six years after the date of issuance, where the fraud is concealed, the cause of action is not deemed to accrue until discovery; but, whether the fraud is concealed, or is committed so that it conceals itself, reasonable care and diligence by the United States to discover it are indispensable conditions to a suit to vacate a patent after the bar of the statute has fallen.

2. LIMITATION OF ACTIONS ⊚⟹195(5)—SUIT TO CANCEL PATENT—BURDEN OF PROOF.

Where the United States, after more than six years from the date of issuance, sues to cancel a patent and seeks equitable relief from the bar of Act March 3, 1891, § 8 (Comp. St. 1916, § 5114), it has the burden of showing that it exercised reasonable care and diligence to discover the fraud before limitations ran, that it had no knowledge or notice of facts which would have incited an ordinarily prudent person to inquiry which would have led to a discovery of the fraud, and that defendant concealed the fraud.

3. STATES ⊚⟹190—UNITED STATES ⊚⟹124—EQUITABLE CLAIMS—RULE APPLICABLE.

The equitable claims of a state or nation appeal to the conscience of a chancellor with no greater or less force than would those of a private citizen under like circumstances; and, barring the effect of mere delay, they are judicable in a court of chancery, to whose jurisdiction the state or nation submits them, under the rules applicable to private citizens.

4. PUBLIC LANDS ⊚⟹120—SUITS TO CANCEL PATENT—LIMITATIONS.

A court of chancery cannot grant relief, in a suit by the United States to cancel a patent on account of fraud, after the expiration of six years, in the absence of reasonable care and diligence on its part to discover the same, for Act March 3, 1891, § 8 (Comp. St. 1916, § 5114), expressly forbids such suits, and to grant relief would be a species of judicial legislation.

5. LIMITATION OF ACTIONS ⊚⟹179(2)—PUBLIC LANDS—SUIT TO CANCEL PATENT —BILL.

In a suit to cancel a patent to public land, begun more than six years after issuance, held, that the bill, which showed defendant was and had been in possession, was insufficient to show such diligence on the part of the United States to discover the fraud as would relieve it of the bar of Act March 3, 1891, § 8 (Comp. St. 1916, § 5114).

6. NOTICE ⊚⟹6—POSSESSION.

Possession of real estate is notice to the world of the possessor's title.

7. LIMITATION OF ACTIONS ⊚⟹179(2)—PUBLIC LANDS—SUIT TO CANCEL PATENT —BILL.

A bill seeking cancellation of a patent to public land more than six years after issuance, despite Act March 3, 1891, § 8 (Comp. St. 1916, § 5114), is insufficient, where it merely averred ignorance on the part of the United States at one time, and knowledge of the fraud at a later date, for such allegations are of no effect.

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bill by the United States against the Diamond Coal & Coke Company. The bill was dismissed, as not stating a cause of action, and the United States appeals. Affirmed.

This is a suit in equity, brought by the United States against the Diamond Coal & Coke Company, a corporation, to avoid for fraud in obtaining them the patents to 18 tracts of land, aggregating 2,283 acres, and the deeds thereof made by the 18 patentees to the coal company. The alleged fraud was the hiring and causing by the coal company of dummy entrymen to enter as coal lands, procure patents for, and to convey the lands in controversy to the coal company at its expense and for its benefit, by means of false representations to the local land officers of the United States that each entryman had expended the requisite sums of money in developing the coal mines upon the land he entered, that he was in the actual possession of that land, that he made his entry for his own use and benefit, and not directly or indirectly for the use or benefit of any other person or party, when the facts were that the coal company was in the actual possession of all the land, that it had paid all the expenses of developing mines thereon and all the expenses of entering it, and that it was entered for the benefit of the coal company, and not for the use or benefit of any of the entrymen, all of whom conveyed the lands they respectively entered to the coal company immediately after they finally entered them. The plaintiff alleged that this fraud was perpetrated between February 26, 1895, and December 13, 1903, and that prior to the latter date all the entrymen had conveyed the lands they respectively entered to the coal company. This suit was commenced on October 17, 1917, a little more than 13 years and nine months after the completion of the fraud. The coal company made a motion to dismiss the bill of complaint, on the grounds that it failed to state a case which entitled the plaintiff to any relief in equity, that it disclosed the facts that the alleged cause of action was barred by the act of Congress, and that the plaintiff was guilty of such negligence in failing to discover the fraud and commence the suit, that it was estopped from maintaining it. The court below granted the motion, and the complainant appealed.

David J. Howell, Asst. U. S. Atty., of Cheyenne, Wyo. (Charles L. Rigdon, U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

W. B. Rodgers, of Anaconda, Mont. (L. O. Evans and D. M. Kelly, both of Butte, Mont., and B. M. Ausherman, of Evanston, Wyo., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and ELLIOTT, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). [1, 2] The Act of Congress of March 3, 1891, c. 561, § 8, 26 Stat. 1099 (Comp. St. 1916, § 5114), provides:

"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."

But this statute is construed and enforced pursuant to decisions of the federal courts in co-operation with the familiar equitable principle that where the victim of a concealed fraud exercises reasonable diligence to discover it and fails so to do, or to receive such notice thereof as would excite the attention of, and incite a person of ordinary prudence and ability in his place to an inquiry which would have led to a discovery of the fraud, the cause of action for the fraud does

not accrue until such discovery or the receipt of such notice. Exploration Company v. United States, 247 U. S. 435, 38 Sup. Ct. 571, 62 L. Ed. 1200; United States v. Exploration Co., 203 Fed. 387, 121 C. C. A. 491; Exploration Co. v. United States, 235 Fed. 110, 111, 148 C. C. A. 604; Linn & Lane Timber Co. v. United States, 196 Fed. 593, 116 C. C. A. 267; Bailey v. Glover, 88 U. S. (21 Wall.) 342, 348, 22 L. Ed. 636. In the case last cited, which is approved in Exploration Co. v. United States, 247 U. S. 435, 38 Sup. Ct. 571, 62 L. Ed. 1200, the Supreme Court, after stating that ignorance of the fraud produced by affirmative acts of the perpetrator whereby the facts were concealed relieves from the bar of the statute, added that the weight of authority was in favor of the further proposition:

"That where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

So the rule is that, whether the fraud is concealed by special acts of the perpetrator after its commission or is so committed that it conceals itself, reasonable care and diligence of the injured party to discover it are indispensable conditions of the maintenance of a cause of action upon it after the bar of the statute has fallen. The act of Congress declares that suits by the United States to vacate patents for fraud shall not be brought subsequent to 6 years after the date of the patents. When the 6 years have expired such suits are therefore presumed to be barred. And when the injured party invokes the aid of a court of equity to release him from that bar, the burden unavoidably falls upon the plaintiff to plead and prove (1) that it exercised reasonable care and diligence to discover the fraud before the statute of limitations ran; (2) that it had no knowledge or notice of any action which would have excited the attention of and would have incited a person of ordinary prudence and ability in the plaintiff's situation to an inquiry which would have led to a discovery of the fraud; and (3) that the defendant concealed the fraud by trick or artifice, or so committed it that it concealed itself. Hence the question which the case presents is whether or not the United States has so pleaded these facts as to entitle it to relief by a court of equity from the plain bar of the statute.

[3] By the terms of the Act of Congress of March 3, 1891, this suit is forever barred unless the court of equity ought to relieve the plaintiff from that bar on the equitable principle which has been stated. The United States accordingly has invoked the aid of the court of equity and of this equitable principle to secure this relief. The equitable claims of a nation or a state appeal to the conscience of a chancellor with the same, but with no greater or less force, than would those of a private citizen under like circumstances, and, barring the effect of mere delay, they are judicable in a court of chancery, to whose jurisdiction the nation or state voluntarily submits them, by every principle and rule of equity applicable to the rights of a private citizen under similar circumstances. United States v. Stinson, 197 U. S. 200,

204, 205, 25 Sup. Ct. 426, 49 L. Ed. 724; United States v. Detroit Timber & Lumber Co., 131 Fed. 668, 677, 67 C. C. A. 1, 10; United States v. Debell, 227 Fed. 775, 779, 142 C. C. A. 299; United States v. Chandler-Dunbar Water Power Co., 152 Fed. 25, 81 C. C. A. 221; United States v. Midway Northern Oil Co. (D. C.) 232 Fed. 619, 631; State of Iowa v. Carr, 191 Fed. 257, 266, 112 C. C. A. 477, and authorities there cited.

[4] Nor will mere delay by the United States after the expiration of the 6 years in the absence of reasonable care and diligence on its part to discover the fraud suffice to induce a court of chancery to grant the relief from the bar of the act of Congress and the maintenance of its suit under the rule and the authorities, such as United States v. Nashville, Chattanooga & St. Louis Ry. Co., 118 U. S. 120, 125, 6 Sup. Ct. 1006, 30 L. Ed. 81, United States v. Beebe, 127 U. S. 338, 344, 348, 8 Sup. Ct. 1083, 32 L. Ed. 121, United States v. Kirkpatrick et al., 9 Wheat. 720, 6 L. Ed. 199, Gaussen v. United States, 97 U. S. 584, 24 L. Ed. 1009, and United States v. Insley, 130 U. S. 263, 266, 9 Sup. Ct. 485, 32 L. Ed. 968, cited by counsel in support of it, that no time runs against the sovereignty, or as the Supreme Court states it, that the "United States, asserting rights vested in them, as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound." 118 U. S. 125, 6 Sup. Ct. 1008, 30 L. Ed. 81. And this because, first, Congress has clearly manifested its intention by the Act of March 3, 1891, that mere delay for 6 years after the date of the patent shall no longer constitute an excuse for failure to bring, and shall be fatal to, a suit to avoid the patent for fraud, unless a court of chancery relieves it from the bar, on the equitable principle which has been stated, and reasonable care and diligence of the party injured to discover the fraud are a sine qua non of such relief; and, second, because the judicial affirmance of the contention that the mere delay of the United States without reasonable care or diligence on its part to discover the fraud, warrants the maintenance of a suit to avoid the patent after the 6 years would, in effect, repeal the act of Congress, and authorize the maintenance of such suits as freely after as before the expiration of the 6 years, and such a decision would constitute pernicious judicial legislation. United States v. Puget Sound Traction, Light & Power Co. (D. C.) 215 Fed. 436, 441.

[5, 6] Hence the first question in this case is: Has the plaintiff averred in its bill of complaint facts which show that it exercised reasonable care and diligence to discover the fraud, that it had no means of knowledge thereof, no notice sufficient to put it on its guard and call for inquiry, and has it alleged the time when the fraud was discovered, the circumstances of its discovery, what the discovery was, and why it was not made before so that the court may clearly see that the discovery could not have been made before by the exercise of ordinary diligence? For the rule is firmly established by repeated decisions of the federal courts that all these allegations and more are indispensable to the statement of a cause of action in equity for relief from a statute of limitations on the ground of ignorance of the fraud. Wood

v. Carpenter, 101 U. S. 135, 138, 139, 140, 141, 148, 25 L. Ed. 807; Felix v. Patrick, 145 U. S. 317, 321, 12 Sup. Ct. 862, 36 L. Ed. 719; Badger v. Badger, 69 U. S. (2 Wall.) 94, 95, 17 L. Ed. 836; Pearsall v. Smith, 149 U. S. 231, 236, 13 Sup. Ct. 833, 37 L. Ed. 713; Hardt v. Heidweyer, 152 U. S. 547, 559, 14 Sup. Ct. 671, 38 L. Ed. 548. The only facts averred in the bill of complaint pertinent to the question whether or not the plaintiff exercised reasonable diligence to discover the fraud between 1903 when its perpetration was complete and the commencement of this suit on October 11, 1917, were these: The coal company and the entrymen conspired to commit the fraud before they perpetrated it, and, as a part of that conspiracy, they then had an understanding and agreement that they should be silent concerning it and should conceal it. They have done so. "Neither the plaintiff nor any officer of the United States having authority in the premises ever had any knowledge or information concerning the frauds perpetrated upon the plaintiff, as aforesaid, excepting that on or about the month of November, 1916, there was filed in the General Land Office of the United States, at Washington, D. C., a report upon said entries by one John A. Smith, Special Agent of the Department of the Interior." Ever since that day the Interior Department and the Department of Justice have been diligently investigating the fraud and preparing and instituting judicial proceedings to avoid its effect. At the time the lands were entered and at the time the conspiracy to enter them was formed the coal company was in possession of the land, and it has been in possession thereof ever since, and for many years it has been mining these lands and extracting coal therefrom. Each of the entrymen conveyed the portion of these lands that he entered to the coal company immediately after the final entry thereof. The complaint contains no allegations of any other facts tending to show diligence to discover the fraud.

The Supreme Court quoting from Angell on Limitations, § 187 and note, said in 101 U. S. 141, 25 L. Ed. 807:

"The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it."

The transaction here was in reality a sale of the lands by the United States for cash through its local land officers. The fraud alleged was that the United States was induced by the false representations of the coal company and its agents, the entrymen, to sell the lands to the coal company in the belief that it was selling them to the entrymen. But the coal company was in possession of the lands at the time the sale was made and has been in possession of them and operated them ever since. Possession of real estate is notice to the world of the possessor's title. The entrymen conveyed all these lands to the coal company prior to the year 1904. There is no averment in the bill of complaint that these conveyances were not seasonably recorded. In reality this is a suit to rescind a sale for cash of speculative mining property, a proceeding which demands extraordinary promptness and diligence on the part of him who would rescind, on account of the changing values of the property. It is incredible that, under this state of facts, a ven-

dor to whom the open, continuous, operative possession of the fraudulent vendee gave constant notice of its claim of title ever after 1903, could not or would not, if it exercised ordinary diligence, have discovered to whom it had sold its property long before the six years allotted by the statute expired.

[7] Again the burden was upon the complainant to allege facts disclosing persuasive equitable grounds for excusing its failure to discover and avoid the fraud. The Supreme Court has repeatedly pointed out the averments necessary to be made in a pleading to enable the plaintiff to bear this burden. In Wood v. Carpenter, 101 U. S. 140, 143, 25 L. Ed. 807, it declared that a general allegation of ignorance at one time and knowledge at another, was of no effect, that there must be distinct averments as to the time when the fraud was discovered, what the discovery was, how it was made, why it was not made sooner, that the circumstances of the discovery must be fully stated, and that the delay must be shown to have been consistent with requisite diligence. Over and over again has the Supreme Court approved this statement from Badger v. Badger, 69 U. S. (2 Wall.) 95, 17 L. Ed. 836:

"The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the Chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer."

The bill of complaint fails to contain the allegations thus specified and adjudged indispensable to the complainant's alleged cause of action. It contains no averments of any impediments to an earlier prosecution of the plaintiff's claim other than the immaterial fact that it was ignorant of its claim in 1903 and aware of it in 1916. The agreement and understanding of the coal company and the entrymen, to keep silent about and conceal the fraud, is alleged to have been made before it was committed and is therefore merged therein. United States v. Puget Sound Traction, etc., Co. (D. C.) 215 Fed. 436, 440. The complaint contains no allegation of any means used by the coal company after the completion of the fraud in 1903 to keep the plaintiff in ignorance of it. There is nothing in the complaint to show why the fraud could not have been discovered and the suit brought as well at any time after 1903 and prior to 1915 as after the latter date. There is no material averment in it of how and when the plaintiff first came to a knowledge of the matters alleged in the bill. The averment on that subject fails to state any pertinent or material fact except that the plaintiff and all its officers having authority in the premises were ignorant of the fraud until and except that in November, 1916, a special agent of the Interior Department filed a report on the entries on which complaint is made. But the bill contains no statement of the facts this report revealed, of who discovered them, when they were discovered or how or why the special agent made the report, or of any other material facts tending to show that the knowledge of the fraud could not have been discovered as well in 1904 as in 1916. And the conclu-

sion of the whole matter is that the complaint states a case in which, in view of the constant operative possession of the coal company of all the lands in controversy, from prior to 1903 to the present time, and of the conveyance of them to it by the entrymen prior to 1904, the exercise of ordinary care and diligence could and would have discovered the fraud long before the expiration of six years from the dates of the patents and it fails to contain allegations indispensable to constitute a cause of action in equity to relieve the plaintiff from the bar of the Act of Congress of March 3, 1891.

The decree below must therefore be affirmed; and it is so ordered.