# LANE *v.* UNITED STATES EX REL. NEWTON.

---

PUBLIC LANDS; PATENTS; FRAUD; PLEADINGS; JURISDICTION OF LAND DEPARTMENT.

1. An answer pleading fraud as an affirmative defense to a petition to compel the Land Department to issue a patent to public land under sec. 7 of the Act of Congress of March 3, 1891 (26 Stat. at L. 1095), requiring the issuance of a patent to the entryman after the lapse of two years from the date of the final receipt, is demurrable, where no excuse is given for failure to discover the alleged fraud within the two-year period.

2. The limitation in sec. 7 of the Act of Congress of March 3, 1891 (26 Stat. at L. 1095), providing that after the lapse of two years from the final entry of homestead land, the entryman shall be entitled to a patent therefor, is jurisdictional, so that the Land Department

after such period cannot question the right of an entryman to a patent, even upon the ground of his fraud in procuring the receiver's receipt upon the final entry. (Following *Hoglund* v. *Lane*, 44 App. D. C. 310.)

No. 3231. Submitted February 6, 1919. Decided March 31, 1919.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia directing the issue of a writ of mandamus commanding the issue and delivery of a patent to certain public lands.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a judgment of the supreme court of the District of Columbia, directing the issue of a writ of mandamus commanding respondents, Franklin K. Lane, Secretary of the Interior, and Clay Tallman, Commissioner of the General Land Office, to issue and deliver to relator, Allen L. Newton, a patent to certain public lands of the United States.

It appears from the petition that, on September 8, 1904, a plat of survey containing the lands in question was filed in the local land office at Seattle, Washington; that, on the same day, relator filed a homestead entry thereon, and that, on November 21, 1904, he submitted proof in commutation of his entry and paid the purchase price required by law, whereupon a receiver's receipt and certificate of final entry were issued to him. On November 27, 1908, over four years after the issuance of the final receipt, proceedings were instituted against relator for the cancelation of his final receipt for "failure to comply with the homestead law in the matter of residence and cultivation." As a result of this investigation, which appears to be the only one ever made, relator's entry was ordered canceled March 23, 1912.

On May 14, 1918, the Secretary made an order, in part, as follows: "January 29, 1918, claimant filed a petition for the exercise of supervisory authority of the Secretary, asking that the decision holding his entry for cancelation be reconsidered and the land patented to him under the proviso to sec. 7 of the act

of March 3, 1891 (26 Stat. at L. 1095, chap. 561, Comp. Stat. 1916, § 5113, 8 Fed. Stat. Anno. 2d ed. p. 867), in view of the decision in the Supreme Court rendered May 31, 1917, in the case of *Lane* v. *Hoglund,* 244 U. S. 174, 61 L. ed. 1066, 37 Sup. Ct. Rep. 558.   *   *   *   In view of the decision of the Supreme Court in the *Hoglund Case, supra,* and of the fact that no adverse claim to the land has been induced by the claimant's delay in invoking relief of the Department, the cancelation of the entry is vacated, the entry reinstated and patent will issue." Following this order, the Commissioner of the General Land Office approved the entry for patent, but the Department of Justice, upon the request of the Secretary of Agriculture, intervened, and the issuance of the patent has since been withheld.

For answer, respondends admit the foregoing facts, but allege that the final receipt was procured "fraudulently and by false representations and proofs, to the effect that he had made settlement upon said lands prior to the withdrawal of said land as aforesaid and that he had since said settlement continuously resided upon the same and had placed substantial improvements thereon and had cultivated a portion of said land and raised crops thereon." It is further alleged that a suit in equity has been brought in the United States Court for the western district of Washington for the cancelation of the final receipt and to quiet title to said land in the United States.

Relator demurred to the answer. On hearing, the demurrer was sustained, with judgment for relator.

*Mr. Leslie C. Garnett,* for the appellants:

I. Section 7 of the Act of March 3, 1891, is not a confirmatory act, but a statute of limitations, and was not intended to condone fraud or confirm title in a fraudulent entry nor deprive the Secretary of the Interior of jurisdiction to cancel the final certificate for fraud.

The rule for the construction of this statute has been very recently clearly stated by the Supreme Court in *United States* v. *Whited & Wheless,* 246 U. S. 552, 561, as follows: What

was the intention of Congress, confessedly not clearly expressed, with respect to this issue, when it enacted this limitation statute?

Fundamental to the interpretation of the statute which the answering of this question renders necessary lies the rule of law settled "as a great principle of public policy" that the "United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound" (*United States* v. *Nashville, C. & St. L. R. Co.* 118 U. S. 120, 125), and also the fact that this principle has been accepted by this court as requiring not a liberal, but a restrictive, a strict, construction of such statute when it has been urged to apply them to bar the rights of the government.   Thus, in *Northern P. R. Co.* v. *United States,* 227 U. S. 355, 367, the limitation in the Act of March 2, 1896, chap. 39, 29 Stat. at L. 42, was held not applicable to a patent erroneously issued for Indian lands under a railroad grant, and in *La Roque* v. *United States,* 239 U. S. 62, 68, the general language of the very act we are considering was held not applicable to a trust patent for Indian reserved lands.

The supreme court of the District sustained the contention of counsel for petitioner that this case was controlled by the case of *Hoglund* v. *Lane,* 44 D. C. App. 310, affirmed in 244 U. S. 174.   The case, however, is materially different from the *Hoglund Case* in that in the latter case there was merely a charge that the entryman was not in compliance with the law at the time of the withdrawal of the land for forestry purposes. There was no charge, either in the Land Department or in the answer filed in court, that the final receipt and certificate had been obtained by false and fraudulent representations and proof testimony, made with intent to deceive the officials of the Land Department.   Nor was there any statement in the pleadings or in the agreed statement of facts in the *Hoglund Case* that the entry had been canceled by the Land Department for fraud in obtaining the final receipt and certificate.   All of these allegations are set up in the answer of the respondents in this case, and the demurrer, of course, admits their truth.

An analysis of the statute discloses that it was intended to expedite the issuance of patents, to prevent "a practical blockade in the issuance of patents to the serious prejudice of bona fide claimants," and not to condone fraud or to confirm title in a fraudulent entryman.

The proviso which is asserted as a bar to the government's right of action is as follows: That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him.

This proviso is a "statute of limitation and repose," and in such a statute of limitation the exception in cases of fraud is never expressed, because such a qualification is "universally implied." *State* v. *Stone Cattle Co.* 66 Tex. 367.

Immediately following the proviso in sec. 7 are the provisions of sec. 8, as follows: That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents.

The Supreme Court has had occasion to examine, discuss, and construe the bar of the statute in sec. 8. *United States* v. *Whited & Wheless,* 246 U. S. 552; *Exploration Co.* v. *United States,* 247 U. S. 435. In these cases it was urged that sec. 8 was a confirmatory act and a complete bar to any action by the government, and to sustain this contention *United States* v. *Winona, etc. R. R. Co.* 165 U. S. 463; *United States* v. *Chandler-Dunbar Water Power Co.* 209 U. S. 447; *Louisiana* v. *Garfield,* 211 U. S. 70, and *Lane* v. *Hoglund, supra,* were relied upon. In the *Exploration Co. Case,* the court stated the contention as follows (p. 446): It is the contention of the ap-

pellants that the statute was intended to bar all actions after
six years from the date of the issuance of the patent; that if
for six years the government has failed to discover the fraud,
no matter what its diligence in that respect may be, its action
against the guilty parties is forever barred and they may hold
in security the lands thus obtained by grant from the United
States by means of fraud perpetrated in defiance of its laws
enacted for the disposition of the public domain. We are
unable to agree with this contention.

There is no express provision in sec. 8 that a cause of action
should not be deemed to have accrued until discovery of the
fraud, but the court said that such was the undisputed rule of
courts of equity, and that the weight of authority applied the
same rule to actions at law, and thus quotes Mr. Justice Story
in *Sherwood* v. *Sutton,* 5 Mason, 143, as follows: What, then,
is the reason, upon which this exception has been established?
It is, that every statute is to be expounded reasonably, so as to
suppress, and not to extend, the mischiefs which it was designed
to cure. The Statute of Limitations was mainly intended to
suppress fraud, by preventing fraudulent and unjust claims
from starting up at great distances of time, when the evidence
might no longer be within the reach of the other party, by which
they could be repelled. It ought not, then, to be so construed,
as to become an instrument to encourage fraud, if it admits of
any other reasonable interpretation; and cases of fraud, there-
fore, form an implied exception, to be acted upon by courts of
law and equity, according to the nature of their respective juris-
dictions. Such, it seems to me, is the reason on which the ex-
ception is built, and not merely that there is an equity binding
upon the conscience of the party, which the statute does not
reach or control.

The language of this court in *Lane* v. *Duncan Townsite Co.*
44 App. D. C. 66, affirmed in 245 U. S. 308, is peculiarly ap-
plicable to this case: That it is within the supervisory power of
the Secretary of the Interior to withhold the issuance of a pat-
ent for public lands when he is satisfied that the final certifi-

cate has been procured by fraud is well settled. *Cornelius* v. *Kessel,* 128 U. S. 456.

II. Even though the Secretary of the Interior has no jurisdiction after two years after final receipt to cancel it for fraud, in a case where the entry is admitted to be fraudulent, a mandamus will not issue to further, perpetuate, or confirm the fraud and compel the Secretary to do a vain thing.

But mandamus is not a writ of right. It issues to remedy a wrong, not to promote one, and will not be granted in aid of those who do not come into court with clean hands. *Turner* v. *Fisher,* 222 U. S. 204, 209.

This case was *United States* v. *Fisher* in this court (39 App. D. C. 176), in which there was an appeal from the judgment of the supreme court of the District overruling the demurrer to the amended answer of the Secretary of the Interior in a mandamus proceeding. After setting out that the answer averred that the entryman, Cox, had confessed that the entry was fraudulent, and that the entry was canceled, the court said: These facts are admitted, and not avoided by the demurrer. This court has recognized the rule that the writ of mandamus will not go to carry out a transaction tainted with fraud. *United States ex rel. Laws* v. *Davenport,* 34 App. D. C. 502.

This court has well expressed the doctrine in *Lane* v. *Duncan Townsite Co.* 44 App. D. C. 67, as follows: The writ of mandamus is not a writ of right, and the remedy can only be invoked when the relief sought possesses sufficient merit to appeal to the sound discretion of the court. The party seeking its relief must come into court with clean hands, and with a clear legal right for which the law affords no adequate remedy. The writ will not, therefore, issue to compel the performance of a wrong or to confirm or perpetuate a fraud. *United States ex rel. Turner* v. *Garfield,* 33 App. D. C. 195, affirmed in 222 U. S. 204.

This case was affirmed in *Duncan Townsite Co.* v. *Lane,* 245 U. S. 308, 311. Mandamus is an extraordinary remedial process, which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion. It issues to remedy a wrong, not

to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief or will be within the strict letter of the law but in disregard of its spirit. Although classed as a legal remedy, its issuance is largely controlled by equitable principles. The relator having itself only an equity seeks the aid of the court to clothe it with the legal title as against the United States, which now holds both the legal title and the equity, to have set aside an allotment certificate secured by fraud. A writ of mandamus will not be granted for such a purpose. See *Turner* v. *Fisher*, 222 U. S. 204. The judgment of the court of appeals is affirmed.

For example, if, when a patent is about to issue, the Secretary should discover a fatal defect in the proceedings, or that by reason of some newly ascertained fact the patent, if issued, would have to be annulled, and that it would be his duty to ask the Attorney General to institute proceedings for its annulment, it would hardly be seriously contended that the Secretary might not interfere and prevent the execution of the patent. He could not be obliged to sit quietly and allow a proceeding to be consummated which it would be immediately his duty to ask the Attorney General to take measures to annul. It would not be a sufficient answer against the exercise of his power that no appeal had been taken to him and therefore he was without authority in the matter. *Knight* v. *United States Land Asso.* 142 U. S. 161, 178. See also *Cornelius* v. *Kessel*, 128 U. S. 456.

*Mr. F. W. Clements* and *Mr. Alexander Britton* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The decision here must turn upon the interpretation to be placed upon the following proviso to sec. 7 of the Act of Congress of March 3, 1891 (26 Stat. at L. 1095, 1099, chap. 561, Comp. Stat. 1916, §§ 5116, 5113, 8 Fed. Stat. Anno. 2d ed.

pp. 825, 867): "That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him; but this proviso shall not be construed to require the delay of two years from the date of said entry before the issuing of a patent therefor."

It is conceded that no contest or protest or any proceeding whatever was directed against this entry within two years after the issuance of the final receipt. But it is urged that, inasmuch as the proceedings for cancelation finally instituted were based upon alleged fraud, the action is not barred by the limitations of the foregoing statute. Many cases are cited by respondents to the effect that proceedings in the Land Office to acquire title to public lands may be opened and set aside for fraud at any time prior to the issue of patent. But in no case has such a ruling been made in the face of a limitation terminating the Secretary's jurisdiction.

The provision of the statute before us was considered by this court in the case of *Hoglund* v. *Lane,* 44 App. D. C. 310. The facts in that case were substantially the same as in the case at bar. There, as here, cancelation of the entry was sought "on account of nonresidence and lack of cultivation." The facts relied upon in the answer to sustain the jurisdiction of the department were substantially the same in both cases. The present case is differentiated, however, by the averment that, by reason of the alleged acts, the final receipt was fraudulently procured.

In any event, the court below properly sustained the demurrer. Accepting the contention of counsel for the government that the Department had jurisdiction to reopen the case, it could do so only on the ground of fraud discovered after the Statute of Limitations had run. In this, the answer fails to respond to an elementary rule of pleading, since no excuse is assigned for failure to discover the alleged fraud within the

two-year period. In *United States* v. *Diamond Coal & Coke Co.* — C. C. A. —, 254 Fed. 266, a bill of complaint attempting to annul patents to coal lands under sec. 8 of the present act was held defective for failure to allege "the time when the fraud was discovered, the circumstances of its discovery, what the discovery was, and why it was not made before, so that the court may clearly see that the discovery could not have been made before by the exercise of ordinary diligence." This rule of pleading, however, is elementary. *Wood* v. *Carpenter,* 101 U. S. 135, 140, 143, 25 L. ed. 807–809; *Badger* v. *Badger,* 2 Wall. 87, 95, 17 L. ed. 836, 838. The application of the rule is the same, whether the court is considering the sufficiency of a bill of complaint or, as here, an answer, in which an attempt is made to plead fraud as an affirmative defense.

The vague and evasive language here employed to set up fraud, without any attempt to justify the delay, is indicative of a fictitious defense. The facts relied upon are not of such a character that their discovery need involve the Land Department in any difficulty whatever. Efficient administration would seem to dictate an inquiry into the facts before the issue of a final receipt, which would disclose fraud, if it existed, more readily and much more accurately than to negligently allow the investigation, as in this instance, to be postponed for years. The Department has at its command officials, presumably capable, whose duty it is to make such investigations; hence, there is no excuse for failure to set forth the impediments, if any in fact exist, to an earlier discovery of the alleged fraud.

But treating the charge of fraud in the present case as completely distinguishing it in respect of the issues of fact from the *Hoglund Case,* we think respondents' case is not strengthened. We there held the limitation was jurisdictional, and a bar to any action by the Department against an uncontested entry, after the lapse of two years, and that nothing remained for the Department but the mere ministerial act of issuing a patent.

In the *Hoglund Case,* construing the statute, we said: "It is clear that the above proviso is jurisdictional in its operation,

and fixes a limitation beyond which the Secretary is without jurisdiction to question the right of an entryman to his patent. We are not estopped to construe the act by a departmental construction of it in this case.   It is urged by counsel for the government that it is merely a statute of limitations, and the petitioner waived its benefit by failing to take timely advantage of it.   It is not a mere statute of limitations, which relates to and affects procedure, and could therefore be waived.   It is a statute of repose affecting and settling the title to real estate. It establishes a limitation within which the government or a private individual may by protest or contest challenge the title of an entryman.   When the time expires, the right ceases."

On appeal (*Lane* v. *Hoglund,* 244 U. S. 174, 61 L. ed. 1066, 37 Sup. Ct. Rep. 558) the Supreme Court, affirming this court, said: "Looking, then, at the statute in the light of all that bears upon its purpose and meaning, we think it certainly and unmistakably lays upon the Secretary of the Interior, as the head of the Land Department, a plain duty to cause a patent to be issued to a homestead entryman whenever it appears, as concededly it did in this instance, that two years have elapsed since the issue of the receiver's receipt upon the final entry, and that during that period no proceeding has been initiated or order made which calls in question the validity of the entry. In the exercise of its discretion Congress has said, in substance, by this statute that for two years after the entryman submits final proof and obtains the receiver's receipt the entry may be held open for the initiation of proceedings to test its validity, but that if none such be begun within that time it shall be passed to patent as a matter of course.   Thus, in a case like this, where, according, to the conceded facts no proceeding was begun within the prescribed period, there is no room for the exercise of discretion or judgment, but on the contrary a plain duty to see that the entryman receives a patent."

The purpose of Congress in enacting this limitation, as reviewed at length in the opinion of the Supreme Court, was to clear the Land Department of large numbers of entries which "were suspended by the General Land Office on vague and in-

definite suggestions of fraud or noncompliance with law, to await investigation by special agents of that bureau. These suspensions were so numerous and the force available for investigation was so insufficient as to create a practical blockade in the issuance of patents to the serious prejudice of bona fide claimants under the public land laws."

This proviso, in conjunction with the next succeeding section of the act, discloses a design on the part of Congress not only to prevent delays in the Land Department and in the course, but to establish the security of patent titles. Section 8, among other things, provides "that suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." This placed a limitation upon the bringing of suits in equity to annul patents, except in cases based upon fraud, in which the limitations of the statute do not begin to run until the discovery of the fraud. *Exploration Co.* v. *United States,* 247 U. S. 435, 62 L. ed. 1200, 38 Sup. Ct. Rep. 571. The act indicates a clear intention on the part of Congress to fix a limitation upon the jurisdiction of the Land Department for any reason whatever to question the validity of an entryman's right to a patent, and a like limitation within which the patent may be annulled in a court of equity having jurisdiction of the *res.*

No reason has been advanced that would justify us in distinguishing the interpretation to be placed upon the statute in this case from that placed upon it in the *Hoglund Case.* Indeed, the Department was so convinced, until the intervention of the Agricultural Department through the Department of Justice; and the Department of Justice, out of abundant caution, has already instituted a suit in equity, apparently intending, if possible, to secure a judicial cancelation of the final receipt in advance of a final mandate compelling the issuance of a patent.

But it is urged that the issuance of a writ in this case would amount to a perpetuation of a fraud. Of course, mandamus

is not a writ of right.   Its function is to prevent fraud, and not to perpetuate it.   But the question here is one of power. If the Land Department is without jurisdiction to act in the premises, fraud will not confer jurisdiction.   The Congress has seen fit, at the termination of the two-year limitation after the issue of a final receipt, if no contest or protest has been directed against the entry, to transfer jurisdiction of the whole subject-matter from the Department to the courts.   A mere declaration of fraud cannot restore the jurisdiction after it has been lost by the running of the Statute of Limitations.   To resume jurisdiction in such a case recourse must be had to a proceeding in equity, a jurisdiction not possessed by the Land Department.   The action here is not to perpetuate a fraud or to compel the performance of an act which would have that result.   It is to compel the performance of a mere ministerial act imposed by statute.   If fraud in fact exists, it can be remedied in the courts as Congress has expressly directed.

The judgment is affirmed with costs.               *Affirmed.*

Mr. Chief Justice SMYTH concurring specially:

The act of Congress under consideration, according to a decision of the Supreme Court of the United States, is a "statute of limitations and repose."   *Lane* v. *Hoglund,* 244 U. S. 174, 178, 61 L. ed. 1066, 1067, 37 Sup. Ct. Rep. 558.   Being a statute of limitations there is an implied condition therein that in case of fraud it shall not commence to run until the fraud is discovered.   "A statute of limitations," says Judge Story, "ought not, then, to be so construed as to become an instrument to encourage fraud, if it admits of any other reasonable interpretation; and cases of fraud, therefore, form an implied exception, to be acted upon by courts of law and equity, according to the nature of their respective jurisdictions."   *Sherwood* v. *Sutton,* 5 Mason, 143, Fed. Cas. No. 12,782.   The Supreme Court of the United States in construing a statute of limitations, sec. 8 of the act before us, approved the language of Judge Story, just quoted, and said: "The cause of action did not

accrue until the discovery of the fraud; that such was the undisputed doctrine of courts of equity, and that the weight of authority, English and American, applied the same rule to actions at law. *Exploration Co.* v. *United States,* 247 U. S. 435, 447, 62 L. ed. 1200, 1206, 38 Sup. Ct. Rep. 571. See also *Bailey* v. *Glover,* 21 Wall. 342, 22 L. ed. 636; *Rosenthal* v. *Walker,* 111 U. S. 185, 190, 28 L. ed. 395, 397, 4 Sup. Ct. Rep. 382; *State* v. *Stone Cattle & Pasture Co.* 66 Tex. 363, 367, 17 S. W. 735. It appearing by the petition of relator that at the time the Secretary of the Interior declined to deliver the patent more than two years had elapsed since the receiver's receipt and certificate of final entry were issued, it developed upon the appellants to show that the fraud charged was not discovered by them two years before they took action to set aside the entry. This they failed to do in their answer, and, therefore, the right to further withhold the patent is barred.

I do not overlook the principle that a mandamus will not be awarded "to compel the performance of a wrong or to confirm or perpetuate a fraud" (*Lane* v. *Duncan Townsite Co.* 44 App. D. C. 63, 67, 245 U. S. 311, 62 L. ed. 311, 38 Sup. Ct. Rep. 99); and if there was before us such evidence of fraud as we could consider I would be of the opinion that a mandamus should be denied. But a demurrer admits only such facts as are well pleaded (*Commercial Bank* v. *Buckner,* 20 How. 108, 125, 15 L. ed. 862, 868), and the facts set forth in the answer are not well pleaded,—are not pleaded so as to constitute a defense,—and therefore must be put out of sight and the case considered as if they were not in it. This being so, the judgment awarding the writ should be affirmed.    *Affirmed.*

A petition for allowance of a writ of error from the Supreme Court of the United States was granted May 26, 1919.